THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DWIGHT P. MARQUIS, Defendant-Appellant.

Fourth District   No. 14360

Opinion filed November 4, 1977.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Thomas W. Gendry, Assistant State's Attorney, and Susan K. Luther, law student, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

On March 2, 1977, after a trial by jury in the Circuit Court of Macon County, defendant Dwight P. Marquis was found guilty of the offenses of reckless driving, fleeing or attempting to elude a police officer and speeding. The trial judge vacated the reckless driving conviction but entered judgment upon the fleeing or attempting to elude a police officer and speeding verdicts and sentenced defendant to 90 days' imprisonment. On appeal, defendant contends that the trial court erred (1) in admitting hearsay evidence over his objection, (2) in permitting the prosecutor to make reference in argument to defendant's failure to call a witness, (3) in failing to properly instruct the jury as to the mental state requisite to the offense of fleeing or attempting to elude a police officer and (4) in imposing sentence while under a misapprehension as to the maximum sentence of imprisonment that could be imposed for fleeing or attempting to elude a police officer.

The essence of the State's case is the testimony of Decatur police officer Clifford E. Kretsinger. On May 8, 1976, at about 6 a.m., he had set up a radar unit upon a Decatur street. The posted speed limit there was 30 miles per hour. After he had tested the unit and found it to be in proper working condition, the unit was passed by a car which the witness described at trial as a blue Mustang fastback with a light-colored stripe at the bottom of the door. The radar indicated that the car was traveling 85 miles per hour. He described the driver as a white male with light brown hair and wearing a bright red jacket. Kretsinger also stated that a white male passenger with darker hair and wearing a dark blue jacket was riding in the car as a passenger. Kretsinger followed the car for several blocks attempting to stop it by flashing the red lights on his car and sounding his siren but the car did not stop. He soon lost sight of the car. He estimated the car's speed during the chase to be 80 miles per hour. Later, Kretsinger viewed an automobile stopped by some deputy sheriffs at a point some 14 blocks from where the chase started and identified that car as the one chased.

Decatur police officer Thomas Bly testified that he heard Kretsinger's radio report of making chase and soon after saw a car fitting the description of that described by Kretsinger pass him at a high speed at the intersection of Pershing Road and MacArthur Street in Decatur. He was not able to follow that car.

Macon County deputy sheriff Wiley G. Yokely testified that he and Deputy Pellegrini were riding in a squad car when they heard of the chase on the radio. Shortly after that, they saw a blue Mustang which they stopped. This was the car later identified by Kretsinger. Yokely identified the driver as the defendant and said that he had on a red jacket and that a passenger wearing a blue jacket was with him.

Defendant testified that he had been driving along Pershing Road at the time of the incident but had not been in the area of the chase, had not driven at a high speed and had not attempted to flee from any police officers. He testified that Steve Morris, who was sitting beside him in court, was with him at the time in question and was riding as a passenger when they were stopped. He admitted that he was wearing a red Firestone jacket at the time, that Morris had on a blue denim jacket and that he was driving a Fastback that had a silver stripe on the side of the door. Morris was not called as a witness.

The claim that the court erred in admitting hearsay concerns the testimony of Officer Bly and Deputy Yokely. Bly testified that he heard Kretsinger's broadcast. He was then asked:

"Q. Okay. And when Officer Kretsinger came over the air did you receive any kind of description of a vehicle?
A. Yes, sir.

Q. What description was that?

A. He described—

Mr. Darflinger: Objection, Your Honor.

The Court: Overruled.

Q. What description was that?

A. He described the vehicle as being a blue Mustang occupied by two white males, the driver wearing a red jacket and I believe the passenger, a blue jacket."

Yokely's testimony included the following:

"Q. And what happened?

A. Well, we monitored a city transmission to the effect that they were looking for a—

Mr. Darflinger: Your Honor, I am going to object to that.

The Court: Overruled.

Q. Go on.

A. We monitored a city transmission to the effect that they were looking for a blue Mustang."

■■ ■ That the officers were acting pursuant to a police radio broadcast was relevant to their state of alertness and explained why they did what they did. It was not necessary to recite the description given of the car and its occupants, however, in order to show that the officers had been alerted. (*People v. Lawson* (1970), 130 Ill. App. 2d 395, 264 N.E.2d 864; *People v. Thompson* (1970), 128 Ill. App. 2d 420, 263 N.E.2d 124.) The recitation of the description given of the car and its occupants was inadmissible hearsay as proof of the actual identity of the car and occupants that allegedly sped by Kretsinger. Nevertheless, even in *Lawson* and *Thompson,* the admission of such hearsay was not reversible error even though the declarant was not present in court. Here, the declarant, Kretsinger, was present, testified and was cross-examined. This further ameliorated any prejudice to defendant. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) The admission of this hearsay was not reversible error.

During the final portions of the prosecutor's closing argument, the following was stated:

" * * * The defendant has testified that there was a person with him, a Mr. Morris. He is not here—

Mr. Darflinger: Object, Your Honor.

Mr. Gendry: —to corroborate the defendant's story.

The Court: Overruled.

Mr. Gendry: Presumably he would be in here testifying if it was the same facts that the defendant has testified to. You have to judge the defendant's story based on all the facts, as you will be instructed to do by His Honor."

In *People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286, the supreme court ruled that a prosecutor may comment upon the failure of the defendant to call a witness only if the witness was available to the defendant and not the State. There the prosecutor had argued that it was the duty of the defendant to call his codefendants as witnesses. The supreme court stated that to permit this type of argument would have the effect of placing a burden of proof on the defendant. Subsequently, some courts have ruled that any comment upon the defendant's failure to call a witness available to both sides has the effect of shifting the burden of proof even though not stated in terms of the defendant having a duty to call the witness as was done in *Munday*. (*People v. Pepper* (1971), 2 Ill. App. 3d 621, 276 N.E.2d 416.) Recently, in *People v. Mays* (1972), 3 Ill. App. 3d 512, 514, 277 N.E.2d 547, 548, availability was defined as follows:

> " \* \* \* potential alibi witnesses injected into the case by the defendant are deemed unavailable to the prosecution and comment with regard to the failure of such witnesses to testify is proper. (*People v. Gray* [(1964)], 52 Ill. App. 2d 177, 201 N.E.2d 756.)"

In *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170, a defendant testified that at the time of the crime, he was not at the scene and listed certain people who were present with him during the time of the alibi. The court ruled that prosecution comment upon his failure to call those persons who had seen him during the time of his alibi was proper. The prosecutor had qualified his comments by a prior remark that the burden of proof remained upon the State but the Supreme Court did not base its ruling upon that. Rather, the court stated that although the failure to call the witness was not substantial evidence of the defendant's guilt, if there was other substantial evidence of that guilt, the defendant's failure to produce available evidence was a probative circumstance upon which comment was permissible (see also *People v. Spenard* (1977), 46 Ill. App. 3d 892, 361 N.E.2d 856).

■■  Here, although Kretsinger did not identify defendant as the driver of the car that he chased, there was substantial evidence of defendant's guilt. Although Morris was present at the arrest, his name was interjected into the case by the defendant and only by defendant's testimony and defendant made the claim that Morris was present with him during the time of his alibi. Under the definition in *Mays*, Morris was not available to the State. Furthermore, defendant described Morris as his friend. In *People v. Carr* (1969), 114 Ill. App. 2d 370, 378, 252 N.E.2d 912, 916, the court stated, "It is a fair inference that defendant's *friends* and his father were more accessible to him than to the State." (Emphasis added.) The comments of counsel here were not error.

■■  Defendant's post-trial motion did not allege any error in the giving

of instructions. Accordingly, any such error is waived unless it is plain error or denies defendant a substantial right.

The offense of fleeing or attempting to elude a police officer is defined by section 11—204 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—204) in part as follows:

"(a) Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a police officer directing such driver or operator to bring his vehicle to a stop, wilfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class B misdemeanor."

People's instruction 10 stated:

"A person commits the offense of fleeing or attempting to elude a police officer who, while in actual physical control of a motor vehicle, fails to obey a visible or audible signal of a police officer by fleeing or attempting to elude a police officer."

The instruction was given despite the defendant's objection that the instruction should have stated that the accused must "knowingly" fail to obey the officer's signals. People's instruction 11, the issues instruction on fleeing or attempting to elude a police officer, given without objection, also failed to specifically state that knowledge or willfulness was an element of the offense.

■■ In *People v. Deakyne* (1967), 83 Ill. App. 2d 338, 227 N.E.2d 531, a complaint charging eluding a police officer was ruled to be sufficient even though no allegation was made that the accused's failure or refusal to obey the officer's signal was willful. The court reasoned that the word "eludes" includes an element of willfulness and that to include the word willfully in the charge would have been redundant. We believe that the proper practice here would have been to include reference to willfulness in the instruction. We agree with the *Deakyne* court, however, to the extent that the words used tend to indicate willfulness. The trial court's ruling was not plain error and it did not deprive defendant of a substantial right.

During the sentencing hearing, the judge asked the prosecutor whether the offense of fleeing or attempting to elude a police officer was a Class A misdemeanor. The prosecutor replied that it was. In fact, it is a Class B misdemeanor (Ill. Rev. Stat. 1975, ch. 95½, par. 11—204) for which the maximum sentence of imprisonment is a determinate term of not more than 6 months while the maximum sentence for a Class A misdemeanor is a determinate term of not more than 1 year. Defendant maintains that the mistaken belief of the trial judge requires reversal of the sentence and remandment for resentencing. He analogizes this to the situation where error occurs when a defendant is sentenced (1) for a crime other than that

for which he was convicted (*People v. MacArthur* (1971), 2 Ill. App. 3d 1077, 278 N.E.2d 530), (2) with the court considering a conviction which is later reversed on appeal (*People v. Buckley* (1977), 44 Ill. App. 3d 1038, 358 N.E.2d 1327), or (3) when the court is under the mistaken belief as to the minimum term required even though the minimum sentence imposed is in excess of the minimum mistakenly believed to be required (*People v. Brooks* (1977), 51 Ill. App. 3d 800, 364 N.E.2d 994). The theory of the defendant is that had the trial judge known that the legislature had not considered the offense to be serious enough to classify it as a Class A misdemeanor, he would not have imposed such a severe sentence.

The ruling in *Brooks* has analogy to the instant case. In order that the defendant may have the benefit of being sentenced under circumstances where there is no misunderstanding as to the limits of the sentence to be imposed, we remand for resentencing.

The conviction is affirmed. The sentence is vacated and the case is remanded for resentencing.

Affirmed in part, reversed in part and remanded.

CRAVEN, P. J., and TRAPP, J., concur.