THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS HAMILTON, Defendant-Appellant.

Second District   No. 2—88—0440

Opinion filed March 2, 1990.—Modified on denial of rehearing June 6, 1990.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers,

Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Louis Hamilton, was found guilty by a jury of residential burglary and robbery. He was sentenced on the residential burglary conviction to a term of 20 years' imprisonment. No sentence was imposed on the robbery conviction. Residential burglary is a Class 1 felony carrying a sentencing range of not less than 4 years and not more than 15 years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(4)). The trial court did not sentence defendant as a Class 1 felon, however, because it found defendant's prior convictions elevated his sentencing range to that of a Class X felon. The sentencing range for a Class X felony is not less than 6 years and not more than 30 years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3)). Defendant was also ordered to pay $571.87 in restitution to Ms. Collingwood and was fined $25.

Defendant appeals from his sentence, contending the court erred in sentencing him as a Class X offender and in ordering him to pay restitution. For the reasons stated below, we reverse and remand for new sentencing.

The trial court sentenced defendant as a Class X offender pursuant to section 5—5—3(c)(8) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8)) after finding defendant had two prior Class 2 felony convictions. Section 5—5—3(c)(8) provides:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8).

Defendant contends the State failed to offer competent evidence to prove the elements stated in section 5—5—3(c)(8). At the sentencing hearing, the State did not offer evidence to prove defendant's prior convictions. The trial court relied on the presentence report, which listed defendant's convictions. The State contends defendant's

prior convictions were sufficiently established by the presentence report, to which defendant did not object, and by defendant's motion to suppress prior convictions, in which he stated his prior convictions.

■■ We need not decide whether the presentence report or defendant's motion to suppress his convictions sufficiently prove the prior convictions because, even if we accepted this proof, we still find no evidence to prove when the offenses were committed, which is a prerequisite to application of the statute. The provision only applies if "(1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8).) The presentence report lists the dates of defendant's arrests and convictions, but it is not possible to tell when the past offenses were committed. Thus, without this proof, it was error to sentence defendant as a Class X offender. (*People v. Parks* (1988), 168 Ill. App. 3d 978, 987.) The sentence is reversed and the cause is remanded for new sentencing.

Next, we must address whether defendant may be sentenced as a Class X felon on remand. Defendant contends this would be a violation of the double jeopardy clause of the fifth amendment. We agree.

The double jeopardy clause does not prevent the retrial of a defendant who succeeds in getting his first conviction set aside on appeal because of a trial error. (*Lockhart v. Nelson* (1988), 488 U.S. 33, ____, 102 L. Ed. 2d 265, 272, 109 S. Ct. 285, 289; *Ball v. United States* (1896), 163 U.S. 662, 41 L. Ed. 300, 16 S. Ct. 1192.) But, when a conviction is reversed on appeal on the sole ground that the evidence was insufficient to sustain the verdict, the double jeopardy clause bars retrial on the same charge. (*Burks v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141.) In regard to sentencing, the Supreme Court has generally held that the double jeopardy clause imposes no absolute prohibition against imposition of harsher sentences at retrial after defendant has succeeded in having his original conviction set aside. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) But, the Court has recognized one exception for sentencing determinations involving the death penalty. (*Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852.) The double jeopardy clause bars a State from seeking the death penalty against a defendant on retrial where, in a death sentencing procedure that resembles a trial on the issue of guilt or innocence, the jury decides against a death sentence after the original conviction. 451 U.S. at 446, 68 L. Ed. 2d at 284, 101 S. Ct. at 1862.

In *Bullington*, Missouri sought to impose the death penalty against a defendant on trial for murder after remand from a successful appeal. After the original conviction, a sentencing hearing was held to determine whether defendant should receive the death penalty. Missouri's statute required the State to prove certain factors beyond a reasonable doubt before the jury could return a death sentence. (451 U.S. at 434, 68 L. Ed. 2d at 276, 101 S. Ct. at 1855-56.) The jury sentenced defendant to life imprisonment. (451 U.S. at 435-36, 68 L. Ed. 2d at 277, 101 S. Ct. at 1856.) The Court held that, because the sentencing proceeding at defendant's first trial was like the trial on the question of guilt in that certain factors had to be proved beyond a reasonable doubt, the protection afforded by the double jeopardy clause to one acquitted by a jury is available to a defendant with respect to the death penalty at defendant's retrial. 451 U.S. at 446, 68 L. Ed. 2d at 284, 101 S. Ct. at 1862.

*Bullington* involved the unique proceedings of Missouri's death-penalty sentencing procedure. The Supreme Court has not decided whether the double jeopardy clause may apply to similar sentencing proceedings that do not involve the death penalty. At issue in this case is whether the double jeopardy clause applies to a sentencing proceeding where the State may prove certain facts that will cause defendant's possible sentence range to be elevated beyond the range for the crime of which he stands convicted.

In *Lockhart v. Nelson* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285, the court applied the double jeopardy clause to a sentencing proceeding under a habitual criminal statute that did not involve the death penalty, but it stated in a footnote that, because the lower courts had decided that the double jeopardy clause applied, and the State had conceded the issue, it assumed, though it did not decide, that the double jeopardy clause applied to the case. 488 U.S. at ____ n.6, 102 L. Ed. 2d at 271 n.6, 109 S. Ct. at 289 n.6.

■ The Supreme Court's reservation aside, we believe it is clear, given the Court's decision in *Bullington*, that the double jeopardy clause applies to the sentencing procedure in this case. In *Bullington*, the Court applied the double jeopardy clause because of the procedure used to arrive at the sentence. The Court stated that, unlike the normal sentencing proceeding where the majority of facts considered are nonadversarial in nature, the State was required to prove certain facts beyond a reasonable doubt. Thus, the jury was required to determine whether the State had proved its case. This procedure divested the court of the wide discretion it usually has in sentencing. As a result, the decision differed from the normal sentencing decision

where, if the trial court failed to impose the maximum sentence, it could not be said that the State failed to prove its case. *Bullington*, 451 U.S. at 438-44, 68 L. Ed. 2d at 278-82, 101 S. Ct. at 1857-61.

These factors are present in proceedings where a defendant is sentenced pursuant to section 5—5—3(c)(8). Though the statute is silent as to the burden of proof, it has been held that proof must be beyond a reasonable doubt. (*People v. Harris* (1987), 157 Ill. App. 3d 70, 74, citing *People v. Casey* (1948), 399 Ill. 374, 378-80.) Thus, the trial court must determine whether the State has proved its case. If the State has proved its case, the trial court must use the greater sentencing range in imposing a sentence. The statute provides that where a defendant has certain prior convictions, a defendant's sentence *shall* be elevated to a Class X offender. The statute thus takes away some of the normal discretion of the sentencing court. Because we find that sentencing under section 5—5—3(c)(8) involves the same factors outlined in *Bullington*, we must apply the double jeopardy clause to this case.

The State argues that *Bullington* only prohibits a State from imposing a harsher sentence on remand. Therefore, defendant may be sentenced again as a Class X offender as long as the sentence does not exceed 20 years. We disagree. We believe the thrust of the *Bullington* opinion is that, in sentencing proceedings that involve the unique circumstances outlined above, a State cannot have a second chance to impose a sentence when it failed to prove defendant's prior convictions the first time.

The State also argues that the Illinois Supreme Court has implied that *Bullington* applies only to capital cases. (*People v. Davis* (1986), 112 Ill. 2d 78.) In *Davis*, the court discussed the supreme court's general reluctance to apply the double jeopardy clause to sentencing procedures except those unique to the death penalty. (*Davis*, 112 Ill. 2d at 81-82.) *Davis* did not discuss whether the double jeopardy clause may apply to other sentencing proceedings. Therefore, we find no merit to the State's argument.

Finally, we disagree with the State's contention that this case is similar to *Lockhart*. In *Lockhart*, defendant was sentenced as a habitual offender upon proof beyond a reasonable doubt at sentencing of four prior convictions. (*Lockhart*, 488 U.S. at 34-35, 102 L. Ed. 2d at 270, 109 S. Ct. at 287.) The sentence was reversed, however, because it turned out that one of the prior convictions had been pardoned. The State declared that it would attempt to resentence defendant as a habitual offender using a different prior conviction. (488 U.S. at 37, 102 L. Ed. 2d at 271, 109 S. Ct. at 289.) The Court held that, where

the evidence offered by the State, whether erroneously or not, would have been sufficient to sustain the verdict, the double jeopardy clause does not bar retrial. 488 U.S. at 34, 102 L. Ed. 2d at 269-70, 109 S. Ct. at 287.

*Lockhart* does not apply to the case at bar. As already discussed, the record fails to show any proof of the dates of the prior offenses that led to convictions. Thus, this is not a case where the evidence, sufficient at trial, is later declared insufficient. Here, there clearly was not sufficient evidence presented at trial. Because the State failed to meet its burden of proof, the double jeopardy clause precludes the State from attempting to resentence defendant as a Class X offender on remand.

Defendant next contends, offering three reasons, that the court erred in sentencing him to pay $571.87 restitution.

■ First, defendant argues he has no ability to pay the restitution; therefore, it must be vacated. The statute covering restitution, section 5—5—6 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6), however, does not require the court to find defendant has an ability to pay before ordering restitution. (*People v. Whitfield* (1986), 146 Ill. App. 3d 322, 324-25; *People v. White* (1985), 135 Ill. App. 3d 563, 566.) The only guideline provided by statute states that a court must determine whether restitution is appropriate. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6.

Prior to July 1984, the statute did require a court to consider defendant's ability to pay in considering whether to impose restitution. The deleted portion of the statute stated: "A pre-sentencing hearing shall be held to assess the financial capacity of the defendant to make restitution as well as to determine the amount and conditions of payment at the court's discretion." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—6(a).) The present section 5—5—6(f) provides: "[t]aking into consideration the ability of the defendant to pay, the court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years within which payment of restitution is to be paid in full." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(f).) This section requires a court to consider the ability to pay only in conjunction with the method of payment, not in consideration of whether restitution should be ordered. Since the legislature has deleted that part of the statute requiring a court to consider whether defendant has the ability to make restitution, we find there is no longer such a requirement. Thus, the trial court did not err in failing to make this consideration.

Next, defendant contends the trial court failed to appropriately

value the damaged property of the victim, Anita Collingwood. The court arrived at an amount of $571.87 from figures listed on Ms. Collingwood's victim impact statement. In that statement she listed the following damaged or stolen items and the cost of replacement: cash—$30; telephone—$116.82; telephone cord—$9.51; inside and outside back doors—$415.54; totaling $571.87. Defense counsel remarked to the court that restitution damages should be determined by the comparable value and questioned whether Ms. Collingwood bought "something enhanced to replace the value [*sic*] of the door." Counsel continued: "If she enhanced or improved the door, I don't think that should be credited towards replacement, should be value of comparable." Defendant's objection arises from Ms. Collingwood's testimony that she replaced her wooden door with a steel door. Because counsel objected only to evidence for replacement of the door, we find defendant has waived objection to the amounts credited for the other property. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38.) We address only the evidence concerning the doors.

Section 5—5—6(b) provides that, in fixing the amount of restitution, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(b).) This court has held that out-of-pocket losses should be determined by the fair market value of the property at the time of the crime. (*In re F.D.* (1980), 89 Ill. App. 3d 223.) We believe the replacement costs listed in Ms. Collingwood's victim impact statement are sufficient in this case to prove the fair market value of the doors. Ms. Collingwood stated in her victim impact statement that she had insurance that covered only equal value replacement, and she noted that her insurance company covered the full cost of replacing the doors. We think this is sufficient to establish that the doors were replaced with doors of equal fair market value. We point out that defendant had an opportunity to object to any representations in the presentence report, including the victim impact statement, and defendant had an opportunity to offer evidence to prove that the replacement expenses were not fair market value. Defendant did neither. Thus, we find no error by the trial court.

We do agree, however, with defendant's third point, that the cause must be remanded because the trial court failed to fix a definite method and time for payment pursuant to section 5—5—6(f) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(f)). Section 5—5—6(f) provides that the court, taking into consideration defendant's ability to pay, must determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of five years

within which payment is to be paid in full. Compliance with this statute is mandatory. *People v. White* (1986), 146 Ill. App. 3d 998.

Finally, since the State has conceded defendant's last issue, that the $25 fine imposed pursuant to the Violent Crime Victim's Assistance Act (Ill. Rev. Stat. 1987, ch. 70, pars. 510(c)(1), (c)(2)) must be reduced to $20 because defendant was not sentenced for a crime of violence, we reduce the fine to $20.

In summary, we reverse defendant's 20-year sentence of imprisonment and remand for resentencing with instructions that the court may not sentence defendant under section 5—5—3(c)(8) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8)). We also remand the order of restitution to enable the court to fix the method and time for payment according to section 5—5—6(f) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(f)), and we reduce defendant's fine from $25 to $20.

Reversed and remanded.

McLAREN and WOODWARD, JJ., concur.