THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TORONTO BROOKS, Defendant-Appellant.

First District (1st Division)   No. 1—87—2274

Opinion filed August 13, 1990.

Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Bonnie Meyer Sloan, Special Assistant State's Attorney, and Inge Fryklund and Eileen Rubin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, Toronto Brooks (defendant) was found guilty of theft and robbery (Ill. Rev. Stat. 1985, ch. 38, pars. 16—1, 18—1). The trial court entered judgment on the robbery and sentenced defendant to 10 years in the Illinois Department of Corrections. Defendant appeals his conviction and sentence, contending that the State failed to prove him guilty of robbery beyond a reasonable doubt, that the trial court erred in sentencing him as a Class X offender under the Illinois enhanced sentencing provision (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8)), and that the trial court improperly considered defendant's prior convictions in aggravation to increase his sentence within the Class X felony range. Defendant also raises a further issue in his reply brief, to which the State has submitted a brief in response pursuant to this court's order, of whether the fifth amendment's double jeopardy clause would bar resentencing defendant as a Class X offender in the event of a remand for resentencing. For the reasons set forth below, we

affirm defendant's robbery conviction, vacate his 10-year imprisonment sentence, and remand the case to the trial court for a sentencing hearing on defendant's Class X offender status.

At trial, Daluta Kotelon testified that on December 6, 1986, at approximately 2:30 p.m., she and her friend, Malgorzata Kurowski, were seated on a CTA bus in Chicago, each with a young child on her lap. Kotelon observed a man across the aisle, whom she later identified as defendant, move to the seat directly behind her. While her purse was on her left arm, Kotelon felt "something like someone took—not took, but opened" her purse. After checking her purse and discovering that her wallet, containing $168, was missing, she turned around and saw her wallet in the hands of defendant, who was seated directly behind her. Kotelon then demanded the return of her wallet, but defendant "just push [sic]" her left shoulder and ran away from the bus, located at that point at Damen and Chicago Avenues.

Jose Arzuaga testified that on December 6, 1986, at approximately 3:30 p.m., while he was working on his automobile in the driveway behind his house, located at 2016 West Superior Street, he noticed defendant running very fast. Defendant jumped over a guard railing, stumbled, and dropped money from a brown wallet that he was carrying. Defendant then picked up the money and tossed the brown wallet into a nearby garage. Arzuaga observed defendant's entire face as he exchanged words with him. Defendant continued running.

Arzuaga told a police officer the direction in which defendant ran. He then joined the officer in the squad car and showed him the location of the garage. Arzuaga observed the officer return from the garage with the brown wallet he had previously observed defendant drop.

Chicago police officer Frank Higgins testified that, after receiving a radio dispatch concerning the robbery at approximately 3:30 p.m., he observed defendant walking eastbound on Erie Street, who he believed fit the offender's description of a black male, in his 20's, wearing a black jacket and blue jeans. Defendant, breathing hard and panting, was holding a CTA bus transfer about three blocks from the robbery scene. Higgins escorted defendant to the robbery scene. Before reaching their destination, they were met by Kotelon and Kurowski, both of whom identified defendant as the person who absconded with Kotelon's wallet. Higgins then searched defendant and found $168 in cash in the pocket of his pants.

Following defendant's waiver of his *Miranda* rights at the 13th district police station, defendant told Higgins that he had just exited the bus at Damen and Erie Streets and that he had received the $168 from his friend, Frieda Almond. After subsequently speaking with Almond,

Higgins again spoke with defendant, who then stated that he had received the $168 from his mother.

Defendant did not testify at trial.

■ Addressing defendant's first contention on appeal, he argues that he was not proven guilty of robbery beyond a reasonable doubt because the State failed to prove the essential element of force or the threat of imminent force by defendant in taking the property. Specifically, defendant argues that Kotelon's testimony is insufficient because it demonstrates that no force was used in the actual removal of the wallet and that the "push" did not occur in the context of a struggle for possession of the wallet. The State, relying on *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, maintains that defendant has waived this issue by failing to make a post-trial motion. Because the issue here involves the sufficiency of the evidence, it is reviewable despite defendant's failure to file a post-trial motion. *Enoch*, 122 Ill. 2d at 190, 522 N.E.2d at 1131-32.

■■■ The offense of robbery requires the "use of force" or "threatening the imminent use of force." (Ill. Rev. Stat. 1985, ch. 38, par. 18—1.) Without such, there is no robbery, although the act may constitute a theft. (Ill. Rev. Stat. 1985, ch. 38, par. 16—1.) In seeking to differentiate between these two offenses, our supreme court has stated that generally a simple snatching or sudden taking of property from an unsuspecting person will be insufficient force to constitute robbery, though the act may be robbery where a struggle ensues, the victim is injured in the taking, or the property is so attached to the victim's person or clothing as to create resistance to the taking. *People v. Patton* (1979), 76 Ill. 2d 45, 51-52, 389 N.E.2d 1174, 1175.

■ Where force sufficient to constitute robbery is found from the taking of an article attached to the victim's person or clothing, it is said that a perpetrator could not have taken the item without use of force to overcome the physical resistance created by the attachment, as distinguished from "the mere physical effort" which must occur whenever any item, not attached to the person or clothing of the owner, is transferred from the owner to the taker. (*People v. Taylor* (1989), 129 Ill. 2d 80, 84, 541 N.E.2d 677, 679.) Such is not the situation here. Unlike *Taylor*, where our supreme court found that defendant had to use force sufficient to overcome the resistance created by the attachment of a necklace to the victim's person, the wallet here, located in a purse on the victim's arm, was not so attached to the victim's person as to create a resistance requiring, in order to effectuate the taking, the use of force to overcome the resistance.

■ Where an item is not so attached to the owner, the taker must

use more than the mere physical effort of transferring an item from the owner to himself to constitute robbery. (*Taylor*, 129 Ill. 2d at 84, 541 N.E.2d at 679.) As the supreme court in *Hall v. People* (1898), 171 Ill. 540, 49 N.E. 495, explained:

> "[W]here it appear[s] that the article was taken without any sensible or material violence to the person, as snatching a hat from the head or a cane or umbrella from the hand of the wearer,—rather by sleight of hand and adroitness than by open violence, and without any struggle on his part,—it is merely larceny from the person." (*Hall*, 171 Ill. at 542-43, 49 N.E. at 496.)

The record here does not establish, at the time of the transfer, any more than the mere physical effort of transferring the wallet from the victim's purse to defendant's hands, as the victim testified only that she felt an opening of her purse.

■ The State, though, argues sufficient force was used to constitute robbery because defendant pushed the victim to accomplish his departure. The force or threatened force need not transpire before or during the time the property is taken; the force may be used as part of a series of events constituting a single incident. (*People v. Brown* (1966), 76 Ill. App. 2d 362, 222 N.E.2d 227.) Thus, courts have found an offense to constitute robbery where the perpetrator defends against a challenge immediately upon the taking or where the perpetrator's departure is accomplished by the use of force. *People v. Ditto* (1981), 98 Ill. App. 3d 36, 424 N.E.2d 3; *People v. Houston* (1986), 151 Ill. App. 3d 718, 502 N.E.2d 1174.

■ Defendant argues that the testimony that he pushed the victim's left shoulder after she demanded her wallet and then ran off the bus is insufficient proof of force since there is no indication that the push occurred in the context of a physical struggle for possession of the wallet or that defendant pushed the victim to overcome her physical attempt to prevent the defendant's departure. (*Cf. People v. Chambliss* (1966), 69 Ill. App. 2d 459, 217 N.E.2d 422; *Houston*, 151 Ill. App. 3d 718, 502 N.E.2d 1174.) Defendant's distinction, based upon the type of resistance made by the victim, is not persuasive. The victim here, after she became aware that defendant had positioned himself behind her and had reached into her purse and had taken her wallet, immediately offered verbal resistance to the taking, to which defendant responded by pushing her shoulder and then exiting the bus. We believe this force, used in a series of events involving a single incident and in response to the victim's challenge immediately upon the taking and before defendant's departure, is sufficient to sustain the robbery conviction under Illinois case law.

■ Defendant next contends that the trial court improperly sentenced him as a Class X offender because the State failed to prove that defendant's prior offenses were committed in the sequence required under the relevant sentencing provision. Section 5—5—3(c)(8) of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8)) provides for sentencing as a Class X offender under the following circumstances:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).

At the sentencing hearing, the State informed the trial court that defendant had a prior robbery conviction in September 1984, for which he received 30 months' probation, and another robbery conviction in June 25, 1985, for which he received 3½ years' imprisonment. The trial court also had before it the presentence investigation report which indicated that defendant's September 21, 1984, conviction had an arrest date of August 7, 1984, and his June 25, 1985, conviction had an arrest date of October 28, 1984. The State did not offer any proof as to when the prior offenses were committed to meet the statutory requirement that the second conviction be based on an offense committed after conviction on the first.

Our First District Appellate Court, on four separate occasions, has addressed similar circumstances under this sentencing provision. In *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130, *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 545 N.E.2d 942, and *People v. Washington* (1990), 195 Ill. App. 3d 520, 552 N.E.2d 1067, the courts held that the State failed to satisfy its burden of proving that defendant's offense and convictions occurred either in the time period or in the sequence required by the statute where evidence was presented as to the dates of the convictions and arrests of the prior felonies, but no evidence was presented as to when the offenses were committed. The court in *People v. Stewart* (1989), 186 Ill. App. 3d 833, 542 N.E.2d 915, in contrast, found that the State met its burden where no evidence was presented as to the dates the prior offenses were committed. It reasoned that the trial court could infer, from circumstantial evidence, that

defendant's second felony, for which he was arrested January 25, 1982, was committed after his first felony conviction on February 3, 1981. (*Stewart*, 186 Ill. App. 3d at 838, 542 N.E.2d at 919.) Because we fail to see the logic in inferring merely from the dates of arrest and conviction the date the offense was committed, we follow the holdings of the majority of the courts ruling on this issue from our district.

■ In finding that the State did not meet its burden of proof in this regard, we reject the State's argument that defendant has waived this claim on appeal because he failed to object at the sentencing hearing and conceded that his sentence should be determined as a Class X offender. In *Pietruszynski*, the court held that evidence as to when the prior offense was committed is necessary even if defense counsel does not object to the State's lack of evidence. (*Pietruszynski*, 189 Ill. App. 3d at 1081, 545 N.E.2d at 949.) In *Parks*, the court similarly found no waiver where defense counsel stipulated to the arrest and conviction dates but did not object to the lack of evidence as to the date the offenses were committed. *Parks*, 168 Ill. App. 3d at 987, 523 N.E.2d at 136.

■ Notwithstanding the trial court's error in sentencing defendant as a Class X offender, the State argues that defendant's 10-year sentence should be upheld because, based upon the aggravating factors presented at the sentencing hearing, an extended term could have been imposed under section 5—8—2(a)(4) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(4)), which has a sentence range of not less than seven years and not more than 14 years. The State's argument is without merit because, even if a sentence imposed under a wrong sentencing range fits within a correct sentencing range, the sentence must be vacated due to the trial court's reliance on the wrong sentencing range in imposing the sentence. See *People v. Zozak* (1981), 101 Ill. App. 3d 590, 428 N.E.2d 524; *People v. Marquis* (1977), 54 Ill. App. 3d 209, 369 N.E.2d 372.

We need not consider defendant's second contention regarding his 10-year imprisonment sentence since defendant's sentence must be vacated and remanded for resentencing. Defendant, however, raises a further issue in his reply brief of whether the fifth amendment's double jeopardy clause would bar resentencing defendant as a Class X offender on remand due to the State's failure to present sufficient evidence to qualify him as eligible for Class X sentencing in the original sentencing hearing.

■ Following submission of appellate briefs here, this court ordered the State to respond to this issue. In its response, the State initially urges that we find defendant to have waived this issue for raising

it for the first time in a reply brief. (See *People v. Spencer* (1971), 131 Ill. App. 2d 551, 268 N.E.2d 192; *People v. Knowles* (1970), 130 Ill. App. 2d 78, 264 N.E.2d 716; see also 107 Ill. 2d R. 341(g).) Defendant, in turn, has filed a brief in response, asserting that he properly responded in his original reply brief to the State's request for a second opportunity to prove its case under the statute and that his reply merely made his original request for a new sentencing hearing more specific by requesting that he be sentenced as a Class 2 offender on remand. In light of the above circumstances, the State's adequate opportunity to respond to the issue, and the fact that the issues involve substantial constitutional rights, as well as the sufficiency of the evidence, we will consider defendant's claim.

Recently, two Illinois appellate courts have reached opposite conclusions on the issue of whether the double jeopardy clause bars resentencing under section 5—5—3(c)(8) of the Code where the State failed to prove the dates the prior offenses were committed.[1] *People v. Washington* (1990), 195 Ill. App. 3d 520, 522 N.E.2d 1067, held that double jeopardy did not bar resentencing as a Class X offender under the Illinois enhanced sentencing provision. *People v. Hamilton* (1990), 198 Ill. App. 3d 108, held that it did so bar.

The protection afforded by the double jeopardy guaranty of the fifth amendment in issue here is that against a second prosecution for the same offense after acquittal. In applying this aspect of double jeopardy to the case at bar, our analysis involves two separate inquiries: first, whether the reversal here falls within the category of reversals of convictions on appeal found to invoke this aspect of double jeopardy; and, second, whether this aspect of double jeopardy attaches to the Illinois sentencing procedure for noncapital offenders who qualify for an enhanced sentence under section 5—5—3(c)(8) of the Code.

As to the former inquiry, it is established that the double jeopardy clause operates to prohibit the retrying of a defendant who overturns his conviction on appeal on the ground of insufficient evidence, unlike where the reversal is based upon a trial error in the proceedings leading to the conviction. (*Lockhart v. Nelson* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285; *Burks v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141.) No question exists that the reversal here involves the sufficiency of the evidence, as the State failed to meet its

[1]While this court in *Pietruszynski* (189 Ill. App. 3d 1071, 545 N.E.2d 942), and the court in *Parks* (168 Ill. App. 3d 978, 523 N.E.2d 130), also found the State did not meet its burden of proving the requirements of section 5—5—3(c)(8) of the Code, the parties did not raise the issue of whether the double jeopardy clause would bar resentencing under this provision on remand.

statutory burden of proof. The more difficult inquiry—and the one upon which the Illinois appellate courts are in disagreement—is whether this aspect of double jeopardy attaches to the Illinois enhanced sentencing procedure.

The United States Supreme Court has held that the double jeopardy clause, with regard to resentencing following a defendant's successful attempt to set aside his original conviction, imposes no prohibition against imposition of harsher sentences after a retrial. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) In *United States v. DiFrancesco* (1980), 449 U.S. 117, 133, 66 L. Ed. 2d 328, 343, 101 S. Ct. 426, 435, the Court, in rejecting the argument that the imposition of a sentence was an implied acquittal of a greater sentence, explained that "[h]istorically, the pronouncement of sentence has never carried the finality that attaches to an acquittal." In *Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852, however, a divided Court held, under Missouri's bifurcated capital-sentencing procedure, that a State could not seek the death penalty on a retrial where the original jury had determined defendant should be sentenced to life imprisonment rather than death. It noted that, unlike the previous sentencing procedures to which it held double jeopardy did not attach, the proceeding in issue "resembled *** the immediately preceding trial on the issue of guilt or innocence" and had "all the hallmarks of the trial on the issue of guilt or innocence." *Bullington*, 451 U.S. at 438-39, 68 L. Ed. 2d at 278-79, 101 S. Ct. at 1858.

The Supreme Court has not ruled on whether *Bullington* applies outside the context of capital cases to enhanced sentencing cases.[2] Several Federal circuit courts, however, have addressed the issue and are in disagreement in this regard. Compare *Bullard v. Estelle* (5th Cir. 1982), 665 F.2d 1347; *Nelson v. Lockhart* (8th Cir. 1987), 828 F.2d 446, *rev'd on*

---

[2]The Supreme Court has held in a case involving a habitual criminal statute that resentencing would not be barred by the double jeopardy clause because the reversal involved a "trial error" instead of the sufficiency of the evidence (*Lockhart v. Nelson* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285), but it did not reach the *Bullington* issue. The Court stated that because the State conceded the issue on appeal, it was not deciding whether the double jeopardy clause applied to the noncapital case but would assume that the issue would present no barrier to reaching the claim raised there. (*Lockhart*, 488 U.S. at 37-38 n.6, 102 L. Ed. 2d at 271 n.6, 109 S. Ct. at 289 n.6.) The State here directs us to *United States v. Verdugo-Urquidez* (1990), 494 U.S. 259, 272, 108 L. Ed. 2d 222, 237, 110 S. Ct. 1056, 1064-65, where the Supreme Court noted: "The Court often grants certiorari to decide particular legal issues while assuming without deciding the validity of antecedent propositions, [citations] and such assumptions—even on jurisdictional issues—are not binding in future cases that directly raise the questions."

*other grounds* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285 (double jeopardy applies to State habitual offender statutes), with *Linam v. Griffin* (10th Cir. 1982), 685 F.2d 369; *Denton v. Duckworth* (7th Cir. 1989), 873 F.2d 144 (*dictum*) (double jeopardy does not apply to State habitual offender statutes).

The two Illinois courts which have reached the double jeopardy issue under the Illinois enhanced sentencing provision offer us little guidance on this issue. *Washington* did not expressly address the issue; and, while *Hamilton* noted that the Supreme Court has not decided whether *Bullington* applies outside the capital context, it concluded, without further analysis, that "it is clear, given the Court's decision in *Bullington,* that the double jeopardy clause applies to the [enhanced sentencing procedure]" (*Hamilton*, 198 Ill. App. 3d at 112).

After reviewing the reasoning of the Federal circuit courts regarding the applicability of *Bullington* outside the capital context, we find the reasoning in *Linam* and *Denton* to be the more persuasive. In *Linam*, the Tenth Circuit found that *Bullington*'s concept of an acquittal of a potential death penalty to be inapplicable to New Mexico's bifurcated habitual criminal proceedings. (*Linam*, 685 F.2d at 376.) The Court reasoned:

> "The habitual criminal status is not a conviction of a distinct crime. Indeed, a conviction on the merits has occurred and the crime convicted of is unrelated to the Habitual Criminal Act which produces not a judgment of guilt of the offense, but rather an enhanced sentence. [Citations.]
> ***
>
> The proceedings in *Bullington* included a consideration by the jury of the facts bearing on guilt or innocence. This aspect serves to differentiate a case like the present one in which the increased sentence has nothing to do with the basic cause being tried. *** The death penalty is a part of the offense of murder. This uniqueness of the death penalty unquestionably serves to distinguish *DiFrancesco* from *Bullington*." (*Linam*, 685 F.2d at 375.)

Similar reasoning was adopted by the Seventh Circuit, in *dictum*, from the Indiana Supreme Court on reviewing Indiana's habitual offender proceeding:

> " 'The death penalty is the most extreme penalty authorized by law and for that reason alone warrants unique treatment. It can only be applied within the specific facts of a particular case. The habitual offender status, however, is a continuing status of a particular defendant as long as he has two or more fel-

ony convictions on his record. The state may use this status any time the defendant commits a further crime and a jury's determination that a defendant is not a habitual offender during a particular trial is not an "acquittal" of that defendant's status as a habitual offender.' [Citation.]

\*\*\* [The death penalty proceeding in *Bullington*] 'involved a consideration of the particular facts underlying the substantive offense \*\*\*. Because the habitual offender statute does not create new or separate offenses and the habitual offender proceeding does not deal with the underlying facts on the substantive charge, the use of prior convictions at more than one habitual offender proceeding does not constitute double jeopardy.' [Citations.]" (*Denton*, 873 F.2d at 147, quoting *Durham v. State* (Ind. 1984), 464 N.E.2d 321, 324, 325.)[3]

We likewise conclude that *Bullington* does not apply to the Illinois enhanced sentencing proceeding, which does not involve the unique capital context or the underlying facts of the substantive charge, but involves defendant's continuing status as a habitual offender.

As an alternative basis for our ruling, we agree with the State's argument that, even if *Bullington* applied outside the unique capital context, the Illinois enhanced sentencing procedure for noncapital offenders who qualify under section 5—5—3(c)(8) of the Code is not the type of "mini-trial" present in *Bullington* which bears "the hallmarks of [a] trial on guilt or innocence."

Under the Missouri bifurcated sentencing procedure in *Bullington*, the hearing is held before the same jury that found defendant guilty, the prosecution is required to prove beyond a reasonable doubt the existence of additional facts consisting of statutorily defined aggravating circumstances, and the jury has two sentencing alternatives, death or life imprisonment. The jury is instructed that it is not compelled to impose the death penalty even if aggravating circumstances are found to exist, and the jury is required to make specific, unanimous factual findings of the aggravating circumstances found to exist. Many proce-

---

[3]Subsequent to the Seventh Circuit's decision in *Denton*, the Indiana Supreme Court, in *Perkins v. State* (1989), 542 N.E.2d 549, reconsidered its holding in *Durham* apparently on the mistaken belief that the United States Supreme Court in *Lockhart* (488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285) had ruled that the double jeopardy clause would attach to habitual sentencing proceedings. As discussed in the preceding footnote, *Lockhart* ruled only that double jeopardy would not bar resentencing there because the reversal involved a trial error rather than the sufficiency of the evidence; it did not decide the attachment issue. Thus, we find the Seventh Circuit's agreement with the reasoning set forth in *Durham* to be persuasive.

dural safeguards are also afforded the defendant, including the right to be notified before trial of the aggravating evidence to be offered, the right to counsel, the right to confront witnesses, and the right to present favorable evidence.

The Illinois procedure for enhanced sentencing under section 5—5—3(c)(8) of the Code, on the other hand, requires that the State prove that defendant has committed two prior offenses in a certain sequence for which he has received Class 1 or Class 2 felony convictions. Although the statute does not address the quantum of evidence required to prove the prior convictions and sequence of the offenses, Illinois courts have required proof beyond a reasonable doubt.[4] (See *Pietruszynski,* 189 Ill. App. 3d at 1079, 545 N.E.2d at 948; *Hamilton,* 198 Ill. App. 3d at 113; *People v. Harris* (1987), 157 Ill. App. 3d 70, 74, 510 N.E.2d 107, citing *People v. Casey* (1948), 399 Ill. 374, 378-80.) Once the above is proven, the statute provides that a defendant's sentence "shall" be elevated to a Class X offender. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).) The trial court then has discretion to sentence the defendant, as a Class X offender, to a nonprobationary term of not less than six years and not more than 30 years. Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3(c)(2), 1005—8—1(a)(3).

The sentencing proceedings for Class X offenders under section 5—5—3(c)(8), as well as for most other noncapital offenders, are conducted pursuant to section 5—4—1 of the Code. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1.) Pursuant to this section, the trial court before which the hearing is held considers evidence in aggravation and mitigation, any presentence reports, and arguments as to sentencing alternatives and provides the defendant the opportunity to make a statement and the victim of a violent crime the opportunity to give an impact statement. Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1.

The Illinois enhanced sentencing procedure was found by the court in *Washington* to be distinguishable from the type of "minitrial" present in *Bullington.* The court emphasized that the proceeding consisted merely of a presentation of the presentence report, arguments by counsel, and a statement by the defendant, and that no witnesses were called to testify and no formal introduction of evidence was presented. (*Washington,* 195 Ill. App. 3d at 531, 552 N.E.2d at 1074.) The court in *Hamilton,* on the other hand, in finding the Illinois procedure to be similar to that in *Bullington,* emphasized

---

[4]We note that the State, at oral argument, has disputed the case law requiring proof beyond a reasonable doubt. Because this issue is not determinative of our holding, we will not address this argument.

that, like the procedural factors found important in *Bullington*, the Illinois procedure required the trial court to determine whether the State proved its case beyond a reasonable doubt and, where the State met its burden, the statute took away some of the trial court's normal sentencing discretion by requiring defendant be sentenced as a Class X offender. *Hamilton*, 198 Ill. App. 3d at 113.

Defendant here also argues that it is the use of the reasonable doubt standard at sentencing that calls double jeopardy into play in the Illinois sentencing procedure. We believe this oversimplifies the holding in *Bullington*.

*Bullington* noted many significant differences in the Missouri case from the sentencing cases the Court previously found not to invoke double jeopardy concerns. It noted the fact that the Missouri jury was presented with only two sentencing alternatives instead of the usual unbounded discretion to select an appropriate sentence. It further noted that the prosecution was required to prove additional facts and that the jury was given standards to guide its determination, as opposed to normal sentencing situations where the sentence is determined in large part on the basis of information, such as the presentence report, developed outside the courtroom and where the sentence is " 'purely a judicial determination, [where much of what] goes into it is the result of inquiry that is nonadversary in nature.' " *Bullington*, 451 U.S. at 444, 68 L. Ed. 2d at 282, 101 S. Ct. at 1861, quoting *DiFrancesco*, 449 U.S. at 136-37, 66 L. Ed. 2d at 345-46, 101 S. Ct. at 437.

The sentencing court's discretion, the nonadversarial nature of the additional factual proof, and the procedural aspects of the Illinois enhanced sentencing hearing are distinguishable from the proceeding in *Bullington*. First, the sentencer's choice in the actual punishment to be imposed is far broader in the instant case than that in *Bullington*. While the jury had only two sentencing alternatives upon considering the additional proof in *Bullington*, the additional proof in the Illinois procedure merely elevates the sentencing range; the trial court still retains, in sentencing defendant within the 6- to 30-year range, the usual broad discretion afforded to a sentencing court.

Next, while the fact finder here and in *Bullington* both are guided by the "beyond a reasonable doubt standard," their evaluations under that standard are markedly different. The nature of the additional proof in *Bullington* necessarily required a trial-type adversarial inquiry, where the prosecutor must convince the fact finder of *its view* of the evidence. The additional proof required in the Illinois procedure, in contrast, is more similar to the nonadversarial judicial deter-

mination made in normal sentencing situations.[5] In *Bullington*, an adversarial inquiry necessarily would arise where the jury is required to determine whether any aggravating circumstances exist, whether the circumstances are sufficient to warrant imposition of the death penalty, and whether any mitigating factors outweigh the aggravating circumstances and where the jury is instructed that it is not compelled to impose the death penalty even if convinced of all of the above. Such an adversarial inquiry is not invoked in the Illinois procedure, where the additional proof consists of defendant's prior criminal record or criminal status and where the sentencing court is required, upon proof of this status, to elevate the sentence.

Finally, the Illinois sentencing hearing does not have the same trial-type procedures present in *Bullington*, but more closely resembles the usual sentencing proceedings. Defendant is not entitled to a jury; the sentencing is informal; and the court considers arguments of the parties and informational-type evidence, such as presentence reports.

In allowing the State a second opportunity to prove defendant's Class X offender status under the Illinois procedure, our decision does not oppose the values which underlie the double jeopardy clause's prohibition against retrial after acquittal:

> " 'The underlying idea *** is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " (*Bullington*, 451 U.S. at 445, 68 L. Ed. 2d at 283, 101 S. Ct. at 1861, quoting *Green v. United States* (1957), 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223-24.)

For the reasons previously discussed, resentencing defendant as a

---

[5]*DiFrancesco* is the only other sentencing case before the Court in which the prosecution had the burden to prove additional factual proof similar to the trial-type proof in *Bullington*. *Bullington* distinguished the sentencing procedure in *DiFrancesco* based upon the difference in the quantum of evidence required and the fact that the second proceeding in *DiFrancesco* involved the appellate review of a sentence on the record of the sentencing court, "not a *de novo* proceeding that gives the Government the opportunity *to convince a second factfinder of its view of the facts*." (Emphasis added.) (*Bullington*, 451 U.S. at 440, 68 L. Ed. 2d at 280, 101 S. Ct. at 1859.) The Court's distinction demonstrates that it is the State's second opportunity to present trial-type proof before a second fact finder which brings double jeopardy into play.

Class X offender will not subject defendant to the embarrassment, ordeal and anxiety normally attributed to a trial on the issue of guilt or innocence; nor will it increase the possibility that defendant may be incorrectly adjudged a Class X offender.

In summary, we affirm defendant's robbery conviction, rejecting defendant's contention that insufficient evidence was adduced to establish the element of force to sustain the conviction. We vacate defendant's sentence as a Class X offender due to the State's failure to present any evidence of the dates upon which defendant's prior offenses were committed to meet its statutory burden of proof. We remand this case to the circuit court for a sentencing hearing on defendant's status as a Class X offender, rejecting defendant's contention that the double jeopardy clause bars resentencing him as a Class X offender.

Affirmed in part; vacated in part and remanded.

O'CONNOR and MANNING, JJ., concur