THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFFREY S. LEVIN, Defendant-Appellant.

Second District   No. 2—89—0933

Opinion filed January 25, 1991.

924

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael J. Waller, State's Attorney, or Waukegan (William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Following a jury trial in the circuit court of Lake County, defendant, Jeffrey S. Levin, was convicted of the offense of residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3(a)) and was sentenced to 20 years' imprisonment.

Defendant raises the following issues on appeal: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether the trial court committed reversible error by allowing testimony describing a jacket which defendant was wearing during a traffic stop several months after the offense; (3) whether the trial court committed reversible error in barring a defense witness from testifying as a sanction for a discovery violation; and (4) whether defendant's 20-year sentence was properly imposed.

The incident giving rise to the charges against defendant took place on January 3, 1989, at a residential subdivision in Deer Park, Illinois. Several items of jewelry were taken from the home of Joann Daddono after the home was entered by force. Several weeks later, a neighbor, Ronald Ezsak, identified defendant from an array of police photographs as the man he saw at the home at approximately the time the burglary occurred. Defendant was arrested and subsequently indicted for the offenses of residential burglary and theft, although the State later proceeded to trial on the residential burglary charge only. Defendant filed a motion to suppress the identification made of him by Ezsak because it was allegedly influenced by suggestive police procedures. Among the statements made by Ezsak in his testimony at the hearing on defendant's motion was his testimony that he had observed defendant from a distance of approximately 75 feet. The trial court denied defendant's motion to suppress Ezsak's identification.

Before opening arguments in defendant's jury trial, defendant made a motion *in limine* to exclude testimony from an Arlington Heights police officer regarding the type of jacket defendant was wearing when he was stopped for a traffic violation on April 11, 1989. Defendant contended that there was no specific identification linking his jacket and the one worn by the man Ezsak observed approximately four months earlier. Defendant contended that the testimony regarding the jacket would be unduly prejudicial. The trial court denied the motion, finding that the probative value of the evidence outweighed its potential prejudicial effect.

At trial, Joann Daddono testified that she lived at 226 Court LaGrove in Deer Park, Illinois. On January 3, 1989, she left her home at approximately noon to take her daughter to preschool. When Daddono returned home at approximately 1:20 p.m., she saw a police car in her driveway. The burglar alarm in her house was ringing loudly, and the back door was broken. She noticed footprints in the snow which went between the front and back of her house and between the back of the house and Long Grove Road. Upon inspection, she discovered that several thousand dollars worth of jewelry normally kept in her bedroom was missing.

Ronald Ezsak testified that he lived next to Daddono on Court LaGrove, which he described as a cul-de-sac. As he was working in the second-floor office of his home on January 3, 1989, he faced out of a window from which he could see Daddono's home. At approximately 12:45 p.m., he saw a man drive into Daddono's driveway and approach the front door, where he rang the doorbell a number of times. The man then ran or walked quickly around to the back of Daddono's

house where Ezsak could no longer see him. The man returned a few minutes later holding his coat over his left arm. He described the coat as a dark gray or green waist-length ski jacket with a white band running horizontally across the back at shoulder level. The man then got back into his car and drove away.

He further stated that the car he saw drive into Daddono's driveway was a white, full-size, two-door Buick LeSabre with tinted windows and gray velour interior. Ezsak identified a white, two-door automobile with tinted windows depicted in two photographs, People's exhibits Nos. 5 and 6, as a full-size, two-door Buick LeSabre of the same type as the vehicle he saw. The parties stipulated that the automobile depicted in the photographs was a 1980 Buick Electra two-door coupe registered to defendant on January 3, 1989.

Ezsak testified that, later in the day as he was retrieving mail from his mailbox, he saw a policeman walking around Daddono's house. Ezsak related to the officer what he had seen. Subsequently, on January 26, 1989, Ezsak identified from an array of six photographs a photograph of defendant as the man he had seen at Daddono's house. He also identified defendant in court as the man he saw at Daddono's home.

Ezsak also testified that he never heard a burglar alarm and that, although the automobile depicted in People's exhibits Nos. 5 and 6 was of the same type as the one he had seen, he could not positively identify it as the same car. When asked by defense counsel how close his home is to Daddono's home at their closest point, Ezsak responded:

"A. 60, 70, 80 feet, perhaps a little more.

Q. And where you were seated in that window, that is another 10, 20 feet further?

A. Perhaps.

Q. So when you saw this gentleman out in the the driveway, he could have possibly been at least 100 feet away from you; is that correct?

A. Possibly."

Ezsak indicated on defendant's exhibit No. 4, a photograph showing the two houses, the distance between him and the man observed. Ezsak testified that he has 20/20 vision and does not wear corrective lenses.

Officer Richard Mulder of the Lake County sheriff's office testified that he was dispatched to Daddono's residence in response to the burglar alarm on January 3, 1989, and he arrived there at approximately 1:15 p.m. Upon arriving at the house, he heard the burglar

alarm ringing and found the rear service door of the home "kicked in." He observed footprints in the snow between the front and back of the house which appeared to have been made by a tennis shoe. Mulder stated that he also found a set of footprints between the back door of the home and Long Grove Road near the house.

Arlington Heights police officer Thomas Seleski testified that on April 11, 1989, he stopped defendant for a traffic violation. The jacket worn by defendant on this date was a lightweight, waist-length, greenish or light blue jacket with a horizontal gray or silver stripe. The stripe was on both the front and back sides of the jacket at approximately chest height. On cross-examination, Seleski testified that "greenish, light blue" is equivalent to aqua colored, and he pointed to a juror's shirt which he characterized as "a darker color but a hue of that." Defense counsel noted that the color of the juror's shirt was "a dark to medium green."

Deputy Paul Krawczuk of the Lake County sheriff's department, an evidence technician, testified that he was unable to find any latent fingerprints at Daddono's residence. He stated that he did not test for fingerprints on the rear door of the house.

Before the defendant presented evidence, the State made a motion to exclude the testimony of two defense witnesses who had not been disclosed to the State until that morning. Of importance here is the testimony of John Price, a private investigator, who would have testified that he visited the scene of the offense the prior afternoon and measured the distance from which Ezsak identified defendant to be 217 feet. Defendant indicated that Price's testimony was important because this distance was more than twice that estimated by Ezsak in his testimony. Price would also testify that the distance between the Daddono house and the location at which defendant's alibi witness would place him at the time of the offense was approximately 38 miles. The prosecutor objected to Price's testimony on this point, however, because she had not been informed of it beforehand. Under such circumstances, the prosecutor stated, she could not independently investigate Price's measurements to insure that they were accurate.

The trial court ruled that Price could not testify regarding his measurement of the distance between the two houses, but Price would be allowed to use a tape measure to demonstrate to the jury what a distance of 100 feet looks like. The court also ruled that Price could testify regarding the mileage between Daddono's home and the restaurant where defendant was purportedly located when the offense was committed.

David Karczewski, an alibi witness, testified that he owned a commercial cleaning company and had employed defendant as a window washer on occasion in the past. He had lunch with defendant on January 3, 1989, at an International House of Pancakes restaurant in Chicago. Karczewski testified that he met defendant at Karczewski's office at approximately noon or shortly thereafter, and, after a 40-minute lunch, Karczewski returned to his office at about 1 p.m. Karczewski stated that he noted this date in his log book, which he neglected to bring to court with him, but he did not note this date on his desk calendar.

Defendant's girlfriend, Rhonda Barad, testified that defendant's Buick automobile had a white leather interior.

Price, the private investigator, testified that he measured the distance from the restaurant to Daddono's home to be 38 miles. Price also utilized a 100-foot tape measure to demonstrate to the jury what a distance of 100 feet looks like.

The jury found defendant guilty of residential burglary. At defendant's sentencing hearing, a presentence report contained the following information about defendant's past criminal convictions:

| Offense | Arrested | Sentence | Imposed |
|---|---|---|---|
| Burglary and Theft | 11/28/75 | Probation | 12/17/75 |
| Grand Theft Auto | 12/15/75 | Probation | 12/29/75 |
| Theft | 9/10/76 | Four Months | 6/08/77 |
| Burglary | 10/26/76 | Year & 1 day | 10/18/77 |
| Attempted Burglary | 1/06/77 | Year & 1 day | 7/20/77 |
| Burglary | 4/07/78 | Four years & six months | 9/18/78 |
| Burglary | 9/18/78 | Four years & six months | 9/25/78 |
| Burglary | 12/05/80 | Nine years | 3/16/81 |
| Burglary | 12/08/80 | Six years | 3/10/81 |

The State recommended that defendant be sentenced as a Class X offender under section 5—5—3(c)(8) of the Unified Code of Corrections (Code of Corrections) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8)). Defendant did not contest his eligibility for sentencing as a Class X offender under section 5—5—3(c)(8) of the Code of Corrections. Instead, defense counsel urged the court to impose a lesser sentence due to defendant's lack of a violent criminal history, his relatively young age, and his past problems with cocaine dependency.

The court noted that it had considered the statutory factors in aggravation and mitigation, and it specifically referred to the criminal convictions listed in the presentence report. The court stated that defendant clearly qualified for the "extended term" without specifying the statutory provision upon which it was relying. The court sen-

tenced defendant to 20 years' imprisonment for residential burglary.

We first address defendant's contention that the trial court erroneously denied his motion *in limine* to exclude the testimony of Arlington Heights police officer Thomas Seleski regarding the type of jacket defendant was wearing during a traffic stop more than four months after the date of the offense. Defendant contends that the probative value of this evidence was far outweighed by its prejudicial effect.

We note that, although defendant's motion for a new trial generally argued that the trial court erred by admitting certain irrelevant and immaterial evidence which was prejudicial to defendant, the motion did not specifically mention the jacket or the prior motion *in limine*. Moreover, defendant did not discuss this testimony in the hearing on his motion. Generally, the failure to raise an issue in a post-trial motion waives its consideration on appellate review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) Thus, defendant has waived any objection to this testimony.

However, even if we were to address defendant's contention under the plain error doctrine (107 Ill. 2d R. 615(a)), we would conclude that the testimony was relevant and properly admitted. Relevant evidence is that having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without such evidence. (*People v. Johnson* (1986), 114 Ill. 2d 170, 193, 499 N.E.2d 1355.) The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse. (*Johnson*, 114 Ill. 2d at 193, 499 N.E.2d at 1365.) Here, evidence that defendant owned the same jacket worn by the man seen at Daddono's house would be relevant to proving identity. See *People v. Warmack* (1980), 83 Ill. 2d 112, 125-27, 413 N.E.2d 1254.

Defendant argues, however, that Officer Seleski's testimony does not establish that the jacket worn by defendant was the same as the one worn by the man observed at Daddono's house. However, the similarities in the jackets described by Ezsak and Seleski are substantial. Ezsak testified that he saw a man wearing a dark grey or green waist-length ski jacket with a white band running horizontally across the back at shoulder level. Seleski testified that, during the April traffic stop, defendant was wearing a lightweight, waist-length, greenish or light blue jacket with a horizontal gray or silver stripe. His comparison of the jacket's color with the color of a juror's dark to medium green shirt coincides with the description given by Ezsak. Any discrepancies in the description would merely affect the weight to be

given the identification testimony. See *People v. Slim* (1989), 127 Ill. 2d 302, 308, 537 N.E.2d 317.

■■ ■ Even relevant evidence, however, may be excluded if its prejudicial effect substantially outweighs its probative value. In this context, prejudice is defined as an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt or horror. (*People v. Eyler* (1989), 133 Ill. 2d 173, 218, 549 N.E.2d 268.) Here, defendant does not demonstrate how the admission of Officer Seleski's testimony regarding defendant's jacket might have led to a decision on such a basis. We believe that the trial court did not abuse its discretion in determining that the probative value of Seleski's testimony outweighed its potential prejudicial effect.

Defendant next contends that the trial court's decision not to allow defense witness Price to testify as to the distance from which Ezsak identified defendant was too severe a sanction for defendant's failure to inform the State that such testimony would be offered.

■■ Section 114—13 of the Code of Criminal Procedure of 1963 (the Code) (Ill. Rev. Stat. 1989, ch. 39, par. 114—13) provides that discovery in criminal cases is to be governed in accordance with the supreme court rules. Supreme Court Rule 413(d) requires a defendant's attorney to furnish the State with a list of persons who may be called to testify at trial. (107 Ill. 2d R. 413(d).) The committee comments to Supreme Court Rule 413(d) recite the rationale behind this provision:

> "[D]iscovery eliminates unfair surprise and allows the opposing party to establish the truth or falsity of the defense. In addition, discovery against the defense eliminates the argument that criminal discovery is a one-way street." 107 Ill. 2d R. 413(d), Committee Comments.

There is no question in the instant case that defense counsel was obligated to disclose Price as a potential witness. Counsel knew that Ezsak's identification was crucial. Moreover, Ezsak's testimony at trial revealed nothing more about the distance from which he identified defendant than was already made known at the hearing on defendant's motion to suppress the identification. The question is whether the trial court's sanction for the failure to do so, *i.e.*, exclusion of a major portion of Price's testimony, was warranted under these circumstances.

■■ Supreme Court Rule 415(g) (107 Ill. 2d R. 415(g)) provides for the impositions of sanctions for failure to comply with discovery rules in a criminal proceeding. The rule states, in pertinent part, as follows:

> "(g) Sanctions.
>
> (i) If at any time during the course of the proceedings it is

brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." (107 Ill. 2d R. 415(g).)

The committee comments state:

"If justified under the circumstances, the court may exclude evidence which a party has failed to disclose under applicable discovery rules. The committee felt that such a device is a useful sanction, and that even though some problems may arise in applying it against the accused, the sanction can be applied in some situations." 107 Ill. 2d R. 415(g), Committee Comments.

Supreme Court Rule 415 provides the trial court with an array of sanctions for violation of a discovery rule, including disclosure of the material, granting a continuance, or excluding the evidence. (*People v. Morgan* (1986), 112 Ill. 2d 111, 135, 492 N.E.2d 1303.) The correct sanction to be applied is left to the trial court's discretion, and the trial court's judgment on this matter is given great weight. (*Morgan*, 112 Ill. 2d at 135, 492 N.E.2d at 1312.) Sanctions imposed for discovery violations should be fashioned to meet the circumstances of the particular case with the ultimate objective of compelling compliance, not punishing a party for the oversight or errors of his attorney. (*People v. Anderson* (1980), 80 Ill. App. 3d 1018, 1019, 400 N.E.2d 675.) In Illinois, the sanction of preclusion is limited to only the most extreme cases of discovery violations. *People v. Shriner* (1990), 198 Ill. App. 3d 748, 753, 555 N.E.2d 1257.

Though a trial court may impose sanctions for failure to comply with discovery rules, courts cannot ignore the fundamental character of a defendant's right under the compulsory process clause of the sixth amendment (U.S. Const., amend. VI) to offer the testimony of witnesses in his favor. (*Taylor v. Illinois* (1988), 484 U.S. 400, 414, 98 L. Ed. 2d 798, 814, 108 S. Ct. 646, 655.) Where a party's explanation for failure to disclose a witness reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the compulsory process clause to exclude the witness' testimony. (*Taylor*, 484 U.S. at 415, 98 L. Ed. 2d at 814, 108 S. Ct. at 655-56.) Regardless of whether the discovery violation causes prejudice to the prosecution, willful and blatant violations merit the most

severe sanctions. *Taylor*, 484 U.S. at 416-17, 98 L. Ed. 2d at 815, 108 S. Ct. at 656.

■ In the instant case, the trial court excluded Price's testimony regarding his measurement of the distance from which Ezsak identified defendant even though a much less severe sanction could have cured any possible prejudice to the State. Price was not an occurrence witness or an expert witness for whom the State would have needed significant time to prepare. His testimony regarding the measurement would have been simple and straightforward, and the only prejudice suffered by the State because of defendant's failure to disclose this testimony was the State's inability to test the accuracy of Price's measurements. The trial court could have continued the proceedings to allow the State to conduct its own measurements and allowed the State to call a rebuttal witness on that issue, if necessary, later in the proceedings.

The trial court's failure to consider less severe sanctions and the ease with which any prejudice could have been cured are factors to be weighed in determining whether the court abused its discretion. (See *Shriner*, 198 Ill. App. 3d at 754, 555 N.E.2d at 1262.) Price's testimony would not have required the State to change the theory of its case, nor would it have undercut the State's prior trial strategy in any way. We find an abuse of discretion under these circumstances, and we hold that the severe sanction imposed by the trial court was unwarranted.

■ Having determined that it was error for the trial court to have excluded the testimony in question, we now examine whether such error was harmless. We note that the error here involves defendant's Federal constitutional right to present witnesses on his behalf. Before a Federal constitutional error can be held harmless, a reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. (*People v. Titone* (1986), 115 Ill. 2d 413, 425, 505 N.E.2d 300; see also *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Thus, in order to find the error harmless, we must find beyond a reasonable doubt that the jury's verdict would not have been different had Price been allowed to testify as to his measurement of the distance from which Ezsak identified defendant.

■ We begin our analysis with the critical observation that the issue here is not the accuracy of Ezsak's estimate of the distance from which he made the identification; the issue is whether he was too far away to make a reliable identification. When asked by defendant's counsel whether his vantage point was "at least 100 feet" from

the man he identified as defendant, Ezsak responded, "[p]possibly." We are cautious to avoid focusing on the mathematical precision of Ezsak's estimate when he himself spoke in inexact terms. The fact remains that Ezsak positively and unequivocally identified defendant as the man he saw at Daddono's house. Furthermore, his identification was substantially corroborated by other evidence. Ezsak's description of the perpetrator's car and jacket was substantially similar to defendant's car and jacket.

We also note that other evidence made it possible for the jury to assess the distance between the two houses and the accuracy of an identification made at such a distance. While several photographs admitted into evidence showing the two houses did not reveal a precise measurement of the distance between them, such photos did allow jurors to comprehend the more directly relevant question of whether the houses were too far apart to permit a reliable identification. Price was also allowed to utilize a tape measure to show the jury what a distance of 100 feet looked like. Jurors were further aware that Ezsak did not hear the burglar alarm ringing, which suggested that he may have underestimated the distance from which he observed defendant. Finally, in closing argument, defense counsel contended, based on the evidence admitted, that Ezsak may have been as far as 300 to 400 feet away when he identified defendant. This makes it more likely that the exclusion of Price's measurement was harmless. (See *People v. Bartall* (1983), 98 Ill. 2d 294, 319-20, 456 N.E.2d 59.) Thus, there was sufficient evidence in the record for the jurors to determine adequately the accuracy of Ezsak's identification of defendant.

We conclude beyond a reasonable doubt that the jury's verdict would not have changed had Price's testimony regarding the distance of the identification been admitted. Therefore, we find the erroneous exclusion of this testimony to be harmless in this case. We also reject defendant's alternative argument that he was denied effective assistance of counsel because of his attorney's failure to disclose Price as a potential witness. Defendant would have to demonstrate a reasonable probability that his counsel's alleged deficiencies affected the outcome of the trial to succeed on this claim. (*People v. Weir* (1986), 111 Ill. 2d 334, 338-39, 490 N.E.2d 1.) However, we have already determined that the exclusion of Price's testimony did not affect the jury's verdict, and so defendant's ineffective assistance of counsel claim must fail.

Defendant next contends that the evidence presented at trial was insufficient to prove him guilty of residential burglary beyond a rea-

sonable doubt.

In addressing this contention, the relevant question is, after viewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. West* (1990), 137 Ill. 2d 558, 584, 560 N.E.2d 594.) It is not the function of the reviewing court to retry the defendant. *West*, 137 Ill. 2d at 584, 560 N.E.2d at 606.

It is well established in Illinois that identification of the accused by a single eyewitness is sufficient to sustain a conviction, provided that the witness observed the accused under circumstances permitting a positive identification. (*People v. Johnson* (1986), 114 Ill. 2d 170, 189, 499 N.E.2d 1355.) This is true even in the presence of contradicting alibi testimony, provided that the witness had an adequate opportunity to view the accused and that the in-court identification is positive and credible. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.) Defendant's arguments on appeal focus on the issue of whether the circumstances under which Ezsak identified defendant were sufficient to permit a positive identification.

We conclude that the evidence, when viewed in the light most favorable to the prosecution, is sufficient to have permitted Ezsak to make a positive identification. The identification was made at midday by a man with 20/20 eyesight. Ezsak testified that he observed defendant as he walked toward the front door, waited at the door, walked behind the home, and walked back to his car; this provided ample opportunity to observe defendant. Although the identification was made at a distance of at least 100 feet, the distance was not such as to preclude a rational trier of fact from accepting the accuracy of the identification.

Defendant notes several discrepancies between Ezsak's description of the offender's car and jacket and defendant's own car and jacket. While Ezsak described the offender's car as a white, two-door Buick LeSabre with tinted windows and gray velour interior, the car owned by defendant on January 3, 1989, was a white Buick Electra, and defendant's girlfriend testified that the interior of the car was white leather. Defendant also notes the discrepancies between the offender's jacket as described by Ezsak and the jacket worn by defendant during a traffic stop some four months later as described by Officer Seleski. However, these minor discrepancies go only to the weight to be ascribed to Ezsak's testimony by the trier of fact. (*People v. Herrett* (1990), 137 Ill. 2d 195, 205, 561 N.E.2d 1.) This court will not disregard the jury's assessment of the evidence unless it is so unsatis-

factory as to raise a reasonable doubt of defendant's guilt. (*Johnson*, 114 Ill. 2d at 190, 499 N.E.2d at 1363.) We believe that, in the instant case, the similarities between Ezsak's testimony and the other evidence far outweigh the discrepancies. These similarities corroborate Ezsak's identification of defendant. *Herrett*, 137 Ill. 2d at 206, 561 N.E.2d at 6.

■ Defendant also notes that there was evidence of two sets of footprints in the snow at Daddono's home, implying that the man who Ezsak saw at the front door of the home may not be the same man who forcibly entered at the back door. Defendant essentially argues that another individual may have committed the crime. However, speculation that another person might have committed the offense does not necessarily raise a reasonable doubt as to the guilt of the accused. *Herrett*, 137 Ill. 2d at 206, 561 N.E.2d at 6.

We conclude that the evidence presented at trial, when viewed in the light most favorable to the prosecution, was not so unreasonable, improbable or unsatisfactory that no rational trier of fact could have found defendant guilty beyond a reasonable doubt.

Lastly, defendant raises several arguments pertaining to the 20-year sentence imposed by the trial court. Defendant first argues that the trial court erroneously sentenced him to an extended term under sections 5—5—3.2(b)(1) and 5—8—2 of the Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.2(b)(1), 1005—8—2) even though there was no showing that defendant had previously been convicted of the same or greater class of felony.

Defendant correctly notes that the sentence for residential burglary, a Class 1 felony, is between 4 and 15 years' imprisonment. (Ill. Rev. Stat. 1989, ch. 38, pars. 19—3(b), 1005—8—1(a)(4).) Defendant suggests that the trial court's sentence of 20 years' imprisonment may have been erroneously imposed pursuant to section 5—8—2 of the Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2) based on the aggravating factors in section 5—5—3.2(b)(1) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(1)). Section 5—5—3.2(b)(1) provides that a court may impose an extended term on a felony offender who has been convicted of the same or greater class felony within 10 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(1).) Defendant argues that here, however, there is no indication in the presentence report that any of defendant's past convictions were of a Class 1 or greater class felony.

■ We reject this argument because the record makes it sufficiently clear that the trial court did *not* impose an extended term under sections 5—8—2 and 5—5—3.2(b)(1). Instead, it is evident that the

court sentenced defendant as a Class X offender because of two prior Class 2 felony convictions pursuant to section 5—5—3(c)(8) of the Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8)). A Class X felony has an imprisonment sentence of not less than 6 years and not more than 30 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3).) The State specifically asked the court to sentence defendant as a Class X offender, and defense counsel's arguments were directed toward the Class X sentencing provisions. There is simply nothing in the record to support defendant's speculation to the contrary.

Defendant next argues that, even if he was sentenced as a Class X offender under section 5—5—3(c)(8) of the Code of Corrections, there was insufficient evidence to show that his prior convictions met the requirements of that provision. Specifically, defendant maintains that the record does not demonstrate the sequence of his past offenses and convictions required to establish his eligibility for sentencing as a Class X offender.

The State correctly notes that defendant did not raise this issue below and contends that the issue is, therefore, waived. However, the issue presented is one of the sufficiency of the evidence supporting the enhanced Class X sentence, and the waiver doctrine cannot be applied to relieve the State of its burden of proving defendant's Class X eligibility. (*People v. Kennard* (1990), 204 Ill. App. 3d 641, 657, 561 N.E.2d 1188; *People v. Brooks* (1990), 202 Ill. App. 3d 164, 172, 559 N.E.2d 859.) Therefore, we conclude that defendant has not waived consideration of this issue.

We now address defendant's contention that the sequence of convictions and offenses required by statute to support Class X eligibility cannot be inferred from the record. We undertake this inquiry accepting as true the contents of the presentence report. Defendant's failure to object to the contents of the report waives any errors which could have been corrected by the sentencing court. (*People v. Godinez* (1982), 91 Ill. 2d 47, 57, 434 N.E.2d 1121.) The precise question presented is whether the contents of the presentence report, as relied on by the trial court, are sufficient to demonstrate that defendant is eligible for sentencing as a Class X offender.

Section 5—5—3(c)(8) of the Code of Corrections states:

"(8) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a

Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8).

Here, the presentence report shows that defendant is over age 21; that he has been convicted of a Class 1 felony in the instant case; and that he has four prior convictions of burglary, a Class 2 felony. Moreover, the instant offense was committed on January 3, 1989, after defendant's last burglary conviction on March 16, 1981. Two questions remain: (1) whether either of the burglaries giving rise to defendant's 1978 convictions were *committed* after the 1977 effective date of the statute; and (2) whether one of the subsequent burglaries giving rise to the 1981 convictions was *committed* after the conviction of one of the other burglaries.

■■■ We believe that the record does not contain sufficient evidence to demonstrate these two factors. Neither the presentence report nor any other part of the record shows the date on which the offenses giving rise to defendant's prior convictions occurred. The statute of limitations for commencing a criminal prosecution for burglary is three years from the date of the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 3—5(b).) Therefore, by measuring backward from the date of arrest, the two burglaries of which defendant was convicted in 1978 *could* have been committed as early as April and September 1975, before the effective date of this enhanced sentencing provision. Furthermore, even if these two offenses had been committed after the effective date of the statute, the two burglaries of which defendant was convicted in 1981 *could* have been committed as early as December 1977. This would have been before defendant's 1978 convictions of burglary.

We conclude that it is impossible to infer the required sequence of convictions and offenses from this record. (*Brooks*, 202 Ill. App. 3d at 172, 559 N.E.2d at 863; *People v. Hamilton* (1990), 198 Ill. App. 3d 108, 111, 555 N.E.2d 785, *appeal allowed* (1990), 133 Ill. 2d 564; *People v. Washington* (1990), 195 Ill. App. 3d 520, 529, 552 N.E.2d 1067; *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 1081, 545 N.E.2d 942; *People v. Parks* (1988), 168 Ill. App. 3d 978, 987, 523 N.E.2d 130. Contra *People v. Kennard* (1990), 204 Ill. App. 3d 641, 661, 561 N.E.2d 1188; *People v. Williams* (1990), 201 Ill. App. 3d 434, 438, 559 N.E.2d 96, *appeal allowed* (1990), 133 Ill. 2d 570; *People v. Stewart* (1989), 186 Ill. App. 3d 833, 838, 542 N.E.2d 915, *ap-*

*peal denied* (1989), 128 Ill. 2d 670.) We therefore vacate defendant's sentence and remand the cause for resentencing.

Defendant next relies on this court's opinion in *Hamilton* for the proposition that, upon remand for resentencing, defendant's right to be protected against double jeopardy precludes the State from attempting to establish his eligibility for sentencing as a Class X offender. *Hamilton* held that the State's failure to demonstrate the defendant's eligibility as a Class X offender at his first sentencing hearing precluded, under principles of double jeopardy, resentencing the defendant as a Class X offender upon remand. *Hamilton*, 198 Ill. App. 3d at 114, 555 N.E.2d at 788. Contra *Brooks*, 202 Ill. App. 3d at 178, 559 N.E.2d at 866; *Washington*, 195 Ill. App. 3d at 530-31, 552 N.E.2d at 1073-74.

The State urges this court to abandon *Hamilton* by holding that the double jeopardy clause does not prevent the State from attempting to prove defendant's eligibility for Class X sentencing even if it failed to do so initially. We note that our supreme court has granted leave to appeal in *Hamilton* (133 Ill. 2d 564), which indicates that the supreme court will shortly resolve the issues raised in that case. Under such circumstances, we consider it inappropriate to reconsider the correctness of our prior decision in *Hamilton* and feel constrained by *stare decisis* to abide by the holding in that case. Therefore, we conclude that, upon remand for resentencing, the State is precluded from attempting to establish defendant's eligibility for sentencing as a Class X offender.

Accordingly, the defendant's conviction of residential burglary is affirmed; the sentenced imposed is vacated; and the cause is remanded for resentencing in accordance with this opinion.

Affirmed in part; vacated in part and remanded.

INGLIS and NICKELS, JJ., concur.