28 May 1999

NO. 4-97-0615

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from 

Plaintiff-Appellee, ) Cir­cuit Court of 

      v. ) Champaign County     STACEY M. HOUSER, ) No. 96CF492

Defendant-Appellant. ) 

      ) Hon­orable

) John G. Townsend,

) Judge Presid­ing.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in May 1997, defendant, 

Stacey M. Houser, was con­vict­ed of armed robbery (720 ILCS 5/18-2 (West 1996)), sen­tenced to nine years' im­pris­on­ment with cred­it for 47 days served, and ordered to reimburse Cham­paign County $300 for public defender fees pursuant to section 113-3.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1 (West 1996)).  De­fendant appeals, claiming (1) the trial court abused its discre­tion by precluding a necessity de­fense; (2) the trial court erred by admitting into evidence two prejudicial docu­ments as the basis of an expert witness' opinion; (3) the State failed to prove she was not com­pelled to commit rob­bery be­

yond a reasonable doubt; (4) the er­rors in the trial court cumu­

latively warrant reversal; (5) she is enti­tled to two addi­tional days' sen­tence credit; and (6) imposition of the re­coupment order prior to services being rendered and without a hearing was er­ror.  We agree with defendant on the first and last issues and vacate the recoupment order, re­verse the judgment, and re­mand.

BACKGROUND

In February 1996, defendant was a pa­tient at the Prai­

rie Center (Center) in Champaign, Illinois.  She was un­der­go­ing treat­ment for addic­tion to crack cocaine.  While at the Cen­ter, defen­dant met Richard Rowe and a rela­tion­ship de­vel­oped.  Defen­

dant and Rowe were both discharged from the Cen­ter on March 1, 1996, and, accord­ing to defendant's tes­ti­mo­ny, they moved into defendant's farmhouse in Tolono.  After a few days, Rowe found himself un­com­fortable living at the farmhouse and the cou­ple moved to the Pros­pect Motel in Cham­paign.    

Defendant testified Rowe became abusive toward her sometime be­tween the first and second week after leaving the Center, and both defendant and Rowe resumed drug use.  Defen

dant's tes­ti­mo­ny in­clud­ed sev­er­al spe­cif­ic inci­dents of abuse though she was un­able to place them in time or chro­no­logi­cal order.  Rowe would not allow defen­dant any pri­vacy.  He ac­com­

panied her when she used the bath­room and he would not allow her to use the tele­phone or to leave the motel room with­out him.  On one occasion Rowe punched de­fen­dant in the face for "front­ing" him in the presence of his friends when she sug­gest­ed she drive.  When de­fen­dant said she thought her nose was bro­ken, Rowe punched her again just "for sure."  Rowe forced de­fen­dant to have sex with a man and, on a separate occasion, with a woman, while he watched.  De­fen­dant also wit­nessed Rowe brutal­ly beat­ing others and spe­cifi­cal­ly recalled Rowe beating a man with a base­ball bat.  Rowe often abruptly stopped a violent assault and stared or laughed at his vic­tim.

De­fen­dant worked at the Big­foot Amoco in Mahomet from March 30 through April 11, 1996.  Defen­dant tes­ti­fied Rowe dropped her off and picked her up for her shifts.  The store man­

ager tes­ti­fied he never no­ticed bruis­es on the de­fen­dant, and on at least one occa­sion, defendant drove her­self to work.  De­fen­

dant tes­ti­fied there were no beat­ings during the time she was em­

ployed, she had to give Rowe all her earn­ings, and she quit the job upon Rowe's insistence.  

On the night of April 24, according to defendant's tes­

ti­mo­ny, Rowe or­dered defendant into the car "for a ride."  Defen­dant admitted she used crack cocaine earlier that day.  Rowe parked the car alongside the Big­foot Amoco store and went inside to pur­chase beer and ciga­rettes.  When the cash­ier re­quested iden­ti­fi­ca­tion, Rowe said he would be back and went out to the car.  Rowe re­turned to the counter twice, where each time the cashier re­quest­ed identification and Rowe did not have it.  

Defendant testified after Rowe returned to the car for the last time, he held a knife to her throat and told her she would help him rob the store or he would kill the cash­ier and then kill de­fen­dant.  Rowe then pulled the car up to one of the gas pumps and began pump­ing gas.  While he was pump­ing gas, the cash­ier, who had grown suspicious, wrote down his license plate num­ber.  De­fen­dant en­tered the store, walked be­hind the coun­ter, and at­tempt­ed to take the keys to the register from the cash­ier.

While they struggled over the keys, Rowe came in and tried to con­vince the cash­ier to give defen­dant the keys by tell­

ing her "Todd" (the store manag­er) said it was okay.  When his ploy failed, Rowe jumped over the coun­ter and attacked the cash­

ier.  While Rowe and the cash­ier strug­gled, defen­dant opened the reg­ister and put the cash contents into a plastic bag, emp­tied the cash box, and checked the spare drawer, which is usually set up for the next shift.  Mean­while, Rowe wres­tled the cash­ier to the floor, strad­dled her torso, and cut her neck with a knife.  At some point in the struggle Rowe told de­fen­dant to go out to the car, which she did.  The cashier tes­ti­fied Rowe abrupt­ly stopped the as­sault and stared at her, then got up and walked back to the cus­tomer side of the sales counter.  Rowe or­dered the cash­ier to stay on the floor, assault­ed her once more (ripping off her neck­lace), demanded she hand him some ciga­rettes, and left the store.  After a short time, the cash­ier called 9-1-1.     Police apprehended Rowe and defendant after a brief car chase and minor crash.  Rowe fled on foot and de­fen­dant waited at the car while the po­lice offi­cer pur­sued him.  At the time of the ar­rest de­fen­dant had a knife in her possession which she tes­ti­

fied she carried on Rowe's or­ders as a backup in the event he needed to defend himself.

The store manager testified the following items were missing from the store after the robbery:  $496 currency, ciga­

rettes, beer, and lot­tery tick­ets.  Police re­covered empty beer cans, lottery tickets, and a bag of cash from Rowe's car.  Po­lice also re­cov­ered defendant's hand­bag con­taining a cellular phone and a pager from Rowe's car.  Defendant testi­fied the phone was given to Rowe by a fellow pa­tient at the Center and they never used it because they did not have the code to "un­lock" it.  

Defendant's discovery response disclosed the in­tention to raise a com­pul­sion de­fense.  On the morn­ing of jury selec­tion, defense coun­sel filed a third re­sponse to dis­cov­ery inform­ing the State of its inten­tion to al­ternative­ly raise a necessity de

fense.  The State ob­ject­ed to the filing because it was untimely.  The trial court heard argu­ments, ruled in favor of the State, and barred defen­dant from making a neces­sity de­fense.

Dr. Arthur Traugott testified as an expert witness for the de­fense.  He opined defendant suffers from posttraumatic stress disorder as a result of repeated beat­ings and forced sex and witnessing Rowe's brutality against oth­ers.  Traugott tes­ti­

fied he be­lieves de­fen­dant was abused by Rowe and his belief in her credibility is supported by the consistency of her story, her symptoms, tests he ad­minis­tered, and comparison of her story to other infor­mation he was provided by defense coun­sel.  Final­ly, Traugott testified he believed defendant was com­pelled to com­mit the rob­bery, in accordance with the statuto­ry definition of com­

pulsion.  

The jury found defendant guilty of armed robbery and not guilty of aggravated battery.  She was sentenced to nine years' imprisonment with credit for 47 days as time served.

ANALYSIS

A. Preclusion of the Necessity Defense 

as a Discovery Sanction

We first address whether defendant was entitled to raise a necessity defense.  "'Fun­da­men­tal fair­ness in­cludes, among other things, see­ing to it that certain basic in­structions, es­sential to a fair deter­mina­tion of the case by the jury, are given.'"  
People v. Pegram
, 124 Ill. 2d 166, 173, 529 N.E.2d 506, 509 (1988), quoting 
People v. Ogunsola
, 87 Ill. 2d 216, 222, 429 N.E.2d 861, 864 (1981).  A de­fen­dant is enti­tled to the bene­fit of any de­fense shown by the evi­dence, even where that evi­dence is "slight."  
People v. Bratcher
, 63 Ill. 2d 534, 540, 349 N.E.2d 31, 34 (1976); 
Peo­ple v. Everette
, 141 Ill. 2d 147, 156, 565 N.E.2d 1295, 1298 (1990).

"In general, a defendant is entitled to have the jury instructed on the defense of neces­

sity when evidence, sufficient to raise a reasonable doubt as to guilt, has been intro­

duced that the ac­cused, without blame in occasioning or developing the situation, reasonably believed his conduct, which would otherwise be an offense, was necessary to avoid a public or private injury great­er than the injury which might have resulted from his own con­duct."
  
People v. Ferree
, 221 Ill. App. 3d 212, 216-17, 581 N.E.2d 699, 702 (1991).

Defendant testified Rowe ordered her into the car and drove to the Bigfoot Amoco.  Both defendant and Traugott tes­ti­

fied Rowe threatened the life of the cashier at the same time he threat­ened de­fen­dant to compel her participation.  According to defendant's testimony, when she en­tered the store she was not in­

ter­ested in com­mit­ting a robbery but in saving her life and "the life of anoth­er per­son," the cashier.  On the fore­going facts, we find de­fen­dant was enti­tled to raise a necessi­ty de­fense.

We next consider the propriety of the trial court's pre­clusive sanc­tion.  Defendant concedes the untimely revelation of her in­tent to raise the defense was in violation of Supreme Court Rule 413(d) (134 Ill. 2d R. 413(d)), which requires defense counsel inform the State of any defenses he or she intends to offer.  However, defendant contends it was an abuse of discre­tion to bar the defense as a sanction for her fail­ure to comply with discov­ery rules.  

Sanc­tions may be im­posed for a vio­la­tion of discovery rules under Su­preme Court Rule 415(g) (134 Ill. 2d R. 415(g)), which reads as fol­lows:

"(i) If at any time during the course of the proceedings it is brought to the atten­

tion of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of materi­al and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.

(ii) Wilful violation by counsel of an appli­cable discovery rule or an order issued pur­suant thereto may subject counsel to ap­

pro­priate sanctions by the court."  

The imposition of sanctions for violations of discovery rules is reviewed under an abuse of discretion standard.  
People v. Stack
, 261 Ill. App. 3d 191, 198-99, 633 N.E.2d 42, 47 (1994).  To exer­

cise sound legal discretion, the trial court must con­sid­er the avail­able alter­natives.  
Peo­ple v. Fos­ter
, 271 Ill. App. 3d 562, 569, 648 N.E.2d 337, 342 (1995).  Sanc­tions are de­signed to ac­com­plish the pur­pose of dis­covery, and the imposi­tion of sanc­

tions should not en­croach on a fair trial.  
People v. Spicer
, 158 Ill. App. 3d 699, 702, 511 N.E.2d 235, 238 (1987).  Excluding an accused's defense is an extreme sanction, applicable only in the most ex­treme situa­tions.  
People v. Brooks
, 277 Ill. App. 3d 392, 398, 660 N.E.2d 270, 274 (1996).  

The case at bar is analogous to 
Fos­ter
, decided by this court.  Fos­ter was charged with two counts of aggra­vated bat­tery and never filed a dis­cov­ery response dis­closing his in­ten­tion to assert the affirmative defense of self-defense.  
Fos­ter
, 271 Ill. App. 3d at 563-64, 648 N.E.2d at 338.  At the start of tri­al, the circuit court barred Fos­ter from raising any affir­ma­tive defens­es be­cause of his failure to comply with dis­covery rules.  
Foster pre­sented no evi­dence, and no jury in­struc­tion on self-defense was given.  
Foster
, 271 Ill. App. 3d at 565-66, 648 N.E.2d at 339. 

Reversing Foster's conviction, this court found allow­

ing de­fense coun­sel to flaunt dis­cov­ery rules or com­plete­ly bar­

ring the de­fense were not the only options available.  
Fos­ter
, 271 Ill. App. 3d at 567-68, 648 N.E.2d at 340-41.  We held the trial court did not fully and appro­priately exer­cise its discre­

tion when it failed to consider al­ternative sanc­tions for an attorney's wilful violation of dis­cov­ery rules.  
Fos­ter
, 271 Ill. App. 3d at 569-70, 648 N.E.2d at 342.  Moreover, we urged trial courts to con­sider all avail­able al­ter­na­tives 
be­fore
 im­posing a severe sanc­tion on a defendant.  
Fos­ter
, 271 Ill. App. 3d at 568-

69, 648 N.E.2d at 341.  

In 
Peo­ple v. Levin
, 207 Ill. App. 3d 923, 566 N.E.2d 511 (1991), the second district consid­ered whether bar­ring a de­

fense witness' testimony on a particular point as a sanc­tion for violation of discovery rules was an abuse of dis­cre­tion.  The 
Levin
 court held the preclusion of evi­dence sanc­tion is lim­it­ed to the most extreme cases of discov­ery viola­tions (
Levin
, 207 Ill. App. 3d at 933, 566 N.E.2d at 518) and, be­cause a con­tin­u­

ance would have cured any prej­u­dice against the State, bar­ring the testimony was an abuse of discretion (
Levin
, 207 Ill. App. 3d at 934, 566 N.E.2d at 518).  Sanc­tions should be fash­ioned to meet the cir­cum­stanc­es of the case.  The ulti­mate ob­jective is to compel­ compli­ance with the rules, not to punish a party for his or her attor­ney's er­rors.  
Levin
, 207 Ill. App. 3d at 933, 566 N.E.2d at 518.

In 
People v. Gracey
, 104 Ill. App. 3d 133, 432 N.E.2d 1159 (1982), the fifth district held the defen­dant was denied fundamental fairness when the trial court pre­cluded him from presenting justification and intoxication defenses in his murder tri­al.  The trial court barred the defens­es as a sanc­tion for defendant's failure to disclose them in dis­cov­ery.  Al­though the facts in evi­dence supported the defens­es, the jury was not in­

struct­ed as to the legal signif­i­cance of any find­ings it might make based on that evi­dence.  
Gracey
, 104 Ill. App. 3d at 137, 432 N.E.2d at 1162.  With the jury so impaired, the de­fen­dant was preju­diced and the court feared a mis­car­riage of jus­tice had occurred.  
Gracey
, 104 Ill. App. 3d at 137, 432 N.E.2d at 1162.

Similarly, in 
Brooks
, 277 Ill. App. 3d at 399, 660 N.E.2d at 275, the first district reversed a con­vic­tion after the trial court barred the defendant's alibi de­fense.  The defen

dant's violation of discov­ery rules con­sisted of a typo­graphical error in an ad­dress on the alibi wit­ness list.  
Brooks
, 277 Ill. App. 3d at 396, 660 N.E.2d at 273.  On review, the court held striking the alibi de­fense denied de­fendant a fair trial because "'It is a fundamental right of a defendant to pres­ent his theory of the case,'" and the State failed to show how it was prej­u­diced by defendant's minor infrac­tion of the rules.  
Brooks
, 277 Ill. App. 3d at 398-99, 660 N.E.2d at 274, quoting 
People v. Osborne
, 114 Ill. App. 3d 433, 437, 451 N.E.2d 1, 3 (1983).   

In this case, defendant's discovery violation did not cre­ate an "ex­treme situ­a­tion" sufficient to war­rant bar­ring a defense she was enti­tled to raise.  The State re­ceived no­tice of defendant's in­tent to pres­ent the ne­ces­si­ty de­fense on the day jury selec­tion began, when defendant sought leave to file a third re­sponse to discov­ery.  The State objected and ar­gued because the ne­ces­si­ty and com­pul­sion de­fens­es are comprised of dif­fer­ent ele­

ments, and it had only pre­pared to refute com­pul­sion, al­lowing the necessity de­fense would be un­fairly prejudicial.  De­fense coun­sel argued both de­fens­es rest on the same facts; there­fore, the additional de­fense would require no changes to the wit­ness list or the evi­dence, and any prej­u­dice to the State would be slight.  De­fense counsel also argued the State had prior no­tice of the ap­plicabil­ity of the necessity defense be­cause Traugott's report had been dis­closed and it con­tained the asser­tion defen­

dant acted out of fear for her own life and the life of the cash­

ier.  The trial court was per­suad­ed by the State and sus­tained its ob­jec­tion, preclud­ing defen­dant from putt­ing on a ne­cessi­ty de­fense.

As in the cases cited, the trial court failed to prop­

erly exercise its discretion when it denied defendant a fundamen­

tal right without (a) sufficiently estab­lishing 
how
 the State was unfairly prejudiced, and (b) consid­er­ing al­ter­na­tive sanc­tions.  The trial court's decision to bar the defense was not war­rant­ed absent further inquiry as to how the State would be un­fair­ly prej­u­diced.  

Undeniably, the com­pulsion and necessity defenses are comprised of different ele­ments.  The compulsion defense forgives otherwise criminal con­duct if the actor reasonably be­lieved he would suffer death or great bodily harm if he did not perform the criminal conduct.  720 ILCS 5/7-11 (West 1996).  Under a necessi­

ty de­fense, conduct otherwise constituting an offense is justifi­

able if the defen­dant was with­out blame in occasioning or devel­

oping the situation and reason­ably believed such conduct was nec­

essary to avoid a public or private injury greater than the inju­

ry that might rea­son­ably result from his own conduct.  720 ILCS 5/7-13 (West 1996).  The in­qui­ry does not, how­ev­er, end there.  In this case, the two de­fens­es at issue are close­ly linked, shar­

ing the same fac­tu­al ba­sis.  Both de­fens­es rest on the cred­ibil­i­

ty of defendant's tes­ti­mony as to the con­duct of Rowe.  Under these cir­cum­stances, unfair prej­u­dice to the State upon the un­

time­ly in­tro­duc­tion of an al­ter­na­tive de­fense theory is not a fore­gone con­clu­sion.  

At trial, the State's posi­tion was de­fen­dant was a will­ing par­tici­pant in the robbery and her story of abuse and coer­cion was not cred­i­ble.  Under this prosecutorial strategy, the State did not set out to prove the circumstances of the crime failed to meet the elements of compulsion.  Rather, the State set out to prove defendant a liar.  This strategy does not turn on the theo­ry of the de­fense, for if defendant was lying about being com­pelled to participate, she was also lying about acting under necessity; if she was not, the jury could properly acquit under either theory.  Had the court pressed the State on its claim of unfair prej­u­dice, it might have learned the State's strat­egy would not have been unduly prej­u­diced by allowing the neces­sity de­fense.  

Moreover, allowing the necessity defense would have had little im­pact on much of the State's case in chief.  The first wit­ness­es to testi­fy for the State were oc­cur­rence witnesses, 
i.e.
, the cash­ier, the store manager, and sever­al police offi­

cers.  These witnesses testified to the facts, and their testimo­

ny depended little, if at all, on theories of the defense.  The first wit­ness to tes­ti­fy to defendant's state of mind was not called until the third day of tri­al, and de­fen­dant did not tes­

tify until the fourth day.  We are not satis­fied a con­tinu­ance or other alternative sanction could not have rectified the situ­a­tion cre­at­ed by defense counsel's error.  Barring a defense is a sanc­tion that in­fringes upon the rights of the de­fen­dant and should only be imposed as a last resort.  See 
Foster
, 271 Ill. App. 3d at 568-69, 648 N.E.2d at 341.

We note a less severe sanction would serve the goals of the dis­cov­ery rules and of the sanction provision more effec­tive­

ly than bar­ring the defense.  The primary goals of pre­trial dis­

cov­ery are to promote the search for the truth and elim­inate sur­

prise as a trial tactic.  
People v. Boclair
, 119 Ill. 2d 368, 373, 519 N.E.2d 437, 439 (1987).  The ob­jec­tives of the dis­covery rules are ac­com­plished by compli­ance, not by the exclu­sion of mate­rial evi­dence.  Sanc­tions serve the ob­jec­tives of discovery by "accommodating" for the ad­verse effects of dis­cov­ery viola­

tions.  If sanc­tions other than exclusion can suffi­cient­ly cor­

rect and deter discovery viola­tions, then there is no rea­son to resort to a sanction "that itself consti­tutes 'a con­scious manda­

tory distor­tion of the fact-finding pro­cess when­ever ap­plied.'"   
Taylor v. Illinois
, 484 U.S. 400, 425, 98 L. Ed. 2d 798, 821, 108 S. Ct. 646, 661-62 (1988) (Brennan, J., dissent­ing, joined by Marshall & Blackmun, JJ.), quoting J. Weinstein, 
Some Diffi­cul­

ties in Devising Rules for Determining Truth in Judicial Tri­als
, 66 Colum. L. Rev. 223, 237 (1966).  

Because the trial court abused its discretion when it failed to con­sid­er all avail­able alterna­tives before imposing the most se­vere sanc­tion on de­fen­dant for an error of her attor­ney, de­fendant's conviction is reversed and remanded.  

B. Admission of Exhibits as Basis 

of Expert Witness' Opinion

While it is not necessary for us to address defendant's evidentiary claims, we offer the following discus­sion for the trial court's consider­ation on remand.  

Defendant contends admis­sion of ex­hibit Nos. 13 and 14 put ir­rel­e­vant, con­fus­ing, and high­ly prej­u­di­cial in­for­ma­tion be­

fore the jury.  Exhibit No. 13 is a transcript of the tes­ti­mony of a psy­chiatrist, taken at Rowe's fitness hearing, in which the psy­chia­trist testified Rowe was malingering, 
i.e.
, faking mental illness for secondary gain.  Exhibit No. 14 consisted of let­ters writ­ten to defen­dant, by Rowe, after their arrests.  Both ex­hib­

its were admit­ted as basis of expert witness testimony.  Such evi­dence has been admis­sible in Illinois since the Supreme Court of Illinois adopt­ed Fed­er­al Rules of Evi­dence 703 and 705 (28 U.S.C. app. Fed. Rules Evid. 703, 705 (1994)) in 
Wil­son v. Clark
, 84 Ill. 2d 186, 196, 417 N.E.2d 1322, 1327 (1981).  Under Rule 703, the under­lying facts or data upon which an expert is found to have reason­ably relied are not ad­mitted for their truth but "'for the limited purpose of explain­ing the basis for the expert wit­ness' opinion.'"  
City of Chicago v. Anthony
, 136 Ill. 2d 169, 185, 554 N.E.2d 1381, 1388 (1990), quoting 
People v. Anderson
, 113 Ill. 2d 1, 12, 495 N.E.2d 485, 489 (1986).  A key step in rul­ing on ad­mis­si­bili­ty of Rule 703 evi­dence is de­ter­min­ing wheth­er the type of in­for­ma­tion used by the ex­pert is reli­able.  
Anthony
, 136 Ill. 2d at 185, 554 N.E.2d at 1388.  Such underlying matter is "reli­able" if it is the type of data rea­son­ably re­lied upon by ex­perts in the par­ticu­lar field.  
An­thony
, 136 Ill. 2d at 185, 554 N.E.2d at 1388.

The circuit court has discretion to deter­mine whether the under­lying facts or data are of a type reason­ably relied upon by ex­perts in the field, and such deter­mina­tion shall not be disturbed ab­sent an abuse of discre­tion.  
Anthony
, 136 Ill. 2d at 186, 554 N.E.2d at 1389.  How­ever, the circuit court shall not "'abdicate its inde­pen­dent re­sponsi­bilities to decide if the bases meet minimum stan­dards of reli­ability as a condition of admissi­bili­ty'" simply because the evi­dence is being admitted under Rule 703.  
An­tho­ny
, 136 Ill. 2d at 186, 554 N.E.2d at 1389, quoting 
In re "Agent Orange" Product Liability Litigation
, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985).  "[A] trial judge need not allow an ex­pert to state the un­der­ly­ing facts or data of his opinion 'when [their] probative value in ex­plaining the expert's opinion pales beside [their] like­ly preju­di­cial impact or [their] tendency to cre­ate con­fusion.'"  Anthony, 136 Ill. 2d at 185, 554 N.E.2d at 1388, quot­ing 
Ander­son
, 113 Ill. 2d at 12, 495 N.E.2d at 490.

"The reason for the substantive inadmis­

sibil­ity of the facts or data upon which an expert relies must be considered by the cir­

cuit court.  If another rule of law applica­

ble to the case excludes the information sought to be relied upon by the expert, the information may not be permitted to come before the jury under the guise of a basis for the opinion of the expert."  
Anthony
, 136 Ill. 2d at 186, 554 N.E.2d at 1389.

Our concern in this case is with the State's failure to lay the proper foundation for admission of exhibit Nos. 13 and 14 and its use of the exhibits 
not
 to explain the basis of the ex

pert's tes­ti­mo­ny, but to prejudice the jury against de­fendant.  A prop­er foun­da­tion re­quires the docu­ments be of a type reason­ably relied upon by ex­perts in the field.  Ask­ing the tes­tifying ex­

pert him­self wheth­er he re­lied on the evi­dence does not lay a suf­fi­cient foun­da­tion.  The first ques­tion is not whether 
he
 re­

lied on it, but whether it is the type of docu­ment rea­sonably re­

lied upon 
by
 
ex­perts
 in his field.   

We further advise the State not to lose sight of the pur­pose for ad­mitting evidence under Rule 703.  Such evi­dence is ad­mit­ted for the lim­ited pur­pose of exploring the basis for the expert's opin­ion.  In this case, the prosecu­tor repeatedly read aloud short sec­tions of ex­hib­it No. 14 and, after each section, asked the wit­ness if he re­lied on it.  The prosecutor never asked the wit­ness to explain how, or in what way, he considered the text being read.  Thus, the prosecu­tor's goal appears to have been to put the sub­stance of the docu­ments before the jury, rath­

er than to exam­ine the basis for the opin­ion.  Rule 703 cannot be used to make an end-run around other evi­den­tiary prin­ci­ples in an effort to sully the de­fen­dant with oth­er­wise inad­missi­ble evi­

dence.

C. Reasonable Doubt

In light of our decision to remand this case for a new trial, double jeopardy requires we ad­dress defendant's rea­son­able doubt claim.  
People v. Digirolamo
, 179 Ill. 2d 24, 42, 688 N.E.2d 116, 125 (1997).  Our hold­ing in this case is not based on a find­ing of in­suf­fi­cient evidence.  Evi­dence is sufficient to sup­port a con­viction if, after viewing the evidence in the light most fa­vor­able to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reason­able doubt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).  We find ample evi­dence to sup­port defen

dant's con­vic­tion.  The cashier testi­fied to de­fen­dant's partici­

pation in the rob­bery.  The store manager testi­fied defen­dant did not ap­pear battered during the course of her em­ployment.  Al

though defendant testified to horrific abuse at the hands of Rowe, her testimony was sketchy as to dates and de­tails.  Po­lice offi­cers tes­ti­fied to defendant's casual de­mean­or upon ar­rest, her pos­session of a weapon, a cellular phone, and a pager.  On this evi­dence, the jury could rea­son­ably con­clude de­fen­dant was a willing par­tici­pant in the armed robbery and hold her ac­count­

able.  

D. Recoupment Order Entered Upon Appointment of Counsel

Defendant next contends the court erred in (1) fail­ing to hold a hear­ing to assess her ability to pay attorney fees under sec­tion 113-3.1 of the Code, and (2) entering the recoup­

ment order be­fore any legal services were rendered.  In 
Peo­ple v. Love
, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997), the Su­preme Court of Illi­nois held trial courts are re­quired to con­duct hear­ings into defen­dants' finan­cial re­sources as a pre­condi­tion to order­ing recoup­ment.  In 
People v. Cozad
, 158 Ill. App. 3d 664, 672, 511 N.E.2d 211, 217 (1987), this court held as­sess­ment of fees in ad­vance of ser­vic­es being ren­dered is not appro­priate.  In this case, de­fen­dant was sum­mari­ly or­dered to pay the $300 fee when she re­quested appoint­ment of coun­sel and no hear­ing was held.  The State con­cedes under the pre­ce­dent of 
Love
 the recoup­

ment order must be vacat­ed and the cause remanded for com­pliance with the re­quire­ments of 
Love
. 

We vacate the recoupment order, reverse the conviction and remand for a new trial.  We need not ad­dress the matter of defendant's sentence credit, which can be raised with the trial court if she is again convicted.  

CONCLUSION

 
 Vacated in part and reversed in part; cause remand­ed.

McCULLOUGH and GARMAN, JJ., concur.